Estate of Albert DeCaen Smallwood, Thomas H. Smallwood, William P. Smallwood, and Edward A. Smallwood, Executors, Petitioners, v. Commissioner of Internal Revenue, Respondent.

Docket No. 13564.   Promulgated November 1, 1948.

*Nelson Gammans, Esq.*, for the petitioners.
*Ellyne E. Strickland, Esq.*, for the respondent.

OPINION.

Murdock, *Judge*: The only argument advanced by the respondent is: Section 802 provides that Part II of the estate tax provisions applies to the estates of all citizens of the United States, the decedent was a citizen of the United States, therefore his estate is subject to the

tax.[1] That argument standing alone, seems irresistible. However, this approach oversimplifies the problem before the Court because the respondent thereby ignores and fails to answer the argument of the petitioner. The latter concedes that the decedent was at all times a citizen of the United States and Congress had the power to tax, and his estate would be fully taxable under section 802, if Congress had intended that provision to apply to citizens of the United States who are also citizens of Puerto Rico. The petitioner argues, however, that no such intent is shown or exists, in view of the fact that general internal revenue laws are expressly excepted from those applicable to Puerto ,Rico and that Congress has consistently maintained a benevolent policy in regard to Puerto Rico which it would not change by a general provision of an internal revenue law containing no specific reference to Puerto Rico.

Government counsel at the hearing asked and was granted permission to file a brief as a reply after the petitioner had filed its brief and after a brief *amicus curiae* had been filed on behalf of the Government of Puerto Rico. But instead of answering the arguments contained in the two briefs just mentioned, the respondent states in his brief: "It would serve no good purpose to discuss herein the numerous points which have been raised in the elaborate brief filed on behalf of the petitioners. The issue presented is not a complicated one and does not demand an interpretation of the various statutes enacted by the Congress of the United States in connection with the government of the island of Puerto Rico." This is almost an admission that he has no answer to the petitioner's argument.

The petitioner's brief contains the rather elaborate historical background necessary to arrive at an adequate understanding of the argument contained therein. Only parts of it will be mentioned. Sovereignty over Puerto Rico was transferred from Spain to the United States in 1899 by the Treaty of Paris. Thereafter Congress adopted and has consistently maintained a benevolent policy of solicitude for the welfare and development of Puerto Rico and its inhabitants, including a high degree of local autonomy. The self-government which it delegated was subject to ultimate controls by Congress which have been relaxed from time to time but have never been extended. Congress has obviously endeavored to advance the political, social, and economic status of Puerto Rico for some ultimate status not yet determined. It has never used Puerto Rico as a source of revenue for Federal uses elsewhere. The causes of the American Revolution would explain that attitude. The form of self-government and the general

---

[1] SEC. 802. APPLICATION OF PARTS.
"Part II shall apply to the estates of citizens or residents of the United States * * * "
The estate tax provisions of the code make a distinction between "citizens or residents of the United States" on the one hand and "nonresidents not citizens of the United States" on the other hand.

policy of Congress towards Puerto Rico is shown by the Foraker Act, 31 Stat. 77, also known as the Organic Act of 1900, and the Jones Act of March 2, 1917, known as the Second Organic Act, 39 Stat. 951. It was provided in those acts, and also in a subsequent act, that statutory laws of the United States not locally inapplicable shall apply to Puerto Rico except "the internal revenue laws."

The petitioner concedes that Congress not only can change, but actually has made some changes in, its policy towards Puerto Rico by making some internal revenue laws expressly applicable thereto. However, it points out that when Congress has intended any internal revenue law to apply to Puerto Rico it has always done two things: First, it has expressly stated in the law that it applies to Puerto Rico or that it applies to "possessions," and, second, it has expressly provided in the law that revenues collected thereunder from Puerto Rico shall be covered into the Treasury of Puerto Rico rather than into the Treasury of the United States, citing numerous examples. The provisions of the Internal Revenue Code imposing the estate tax in question are internal revenue laws (*Buscaglia* v. *Ballester*, 162 Fed. (2d) 805; certiorari denied, 332 U. S. 816), but its provisions are general and it contains no specific statement that it applies to Puerto Rico or that revenues collected thereunder from Puerto Rican citizens based upon property situated in Puerto Rico are to be used exclusively for the benefit of Puerto Rico and its inhabitants.

The citizens of Puerto Rico were made citizens of the United States by the Jones Act of March 2, 1917, *supra*. The decedent happened to be first a citizen of the United States and later acquired, in addition, Puerto Rican citizenship by going there to live. Undoubtedly there are many persons living in Puerto Rico who were first citizens thereof and thereafter acquired United States citizenship. However, all persons domiciled in Puerto Rico who are citizens of Puerto Rico and also citizens of the United States are equal under the law, which makes no distinction based on the time or means whereby they acquired either status. *Balzac* v. *Porto Rico*, 258 U. S. 298; Nationality Act of October 14, 1940, 54 Stat. 1137. The respondent advances no contrary argument. Thus the law in question, if it applied at all, would apply to the estates of all Puerto Ricans.

A clear expression of Congressional intention is required to reverse a general policy of government already well established. *Ex parte Crow Dog*, 109 U. S. 556; *Saxonville Mills* v. *Russell*, 116 U. S. 13. Repeals or annulments by implication are not favored and no statute will be construed as repealing a prior one unless so clearly repugnant thereto as to admit of no other reasonable construction. *Cope* v. *Cope*, 137 U. S. 682; *United States* v. *Jackson*, 302 U. S. 628. A later statute, general in its terms but not expressly repealing a prior statute, does not affect the special provisions of the earlier statute. *Rodgers*

v. *United States*, 185 U. S. 83. Congress legislates for territories and possessions under Article IV, Section 3, Clause 2 of the Constitution, whereas it legislates for states under Article I, Section 8, and "Congress has in its enactments recognized * * * that provisions intended for the States did not embrace the territories, unless specially mentioned." *Downes* v. *Bidwell*, 182 U. S. 244; *Munoz* v. *P. R. Ry. Co.*, 83 Fed. (2d) 262; certiorari denied, 298 U. S. 689.

Prior to the Revenue Act of 1934 the provisions of the estate tax law applied only to "residents" of the United States, and persons domiciled in Puerto Rico were not regarded as residents of the United States. The Revenue Act of 1934, which merely added the word "citizen" alongside of the word "resident," is not sufficient under the authorities cited above to indicate a change in policy of Congress toward Puerto Rico and citizens thereof, an implied repeal or annulment of the special provisions of the Jones Act by a later general provision, or an exercise of its sovereign authority over a possession.

The above conclusion does not rob the use of the word "citizen" in the code of due significance. It applies to citizens residing beyond the limits of the United States, its territories, and possessions. Legislative history indicates no other purpose. Apparently the present attitude of the Commissioner is not a consistent one of long standing. The petitioner asserts, without challenge from the respondent, that since the insertion of the word "citizen" in the law the Commissioner has not attempted to collect estate taxes upon the estates of citizens of Puerto Rico except in three instances, of which this is one; the Commissioner completely failed in another, and the third was compromised for a nominal amount.

Section 813 (b) allowed a credit for death duties actually paid to any State, Territory, or the District of Columbia. Section 403 of the Revenue Act of 1939 amended this provision to add the words "or any possession of the United States." The Commissioner mentions this amendment in his brief, but makes no argument based thereon. It might be argued that the amendment just described would be meaningless unless the estates of citizens of the United States who are also domiciled in and citizens of Puerto Rico are subject to Federal estate tax under section 810. Perhaps the respondent has refrained from making any such argument because it is so easily answered. The Treasury Department had recommended to Congress the allowance of a credit for foreign death duties paid in respect to property included in the gross estate for Federal estate tax purposes. Congress realized that similar credit should be allowed to the estates of citizens and residents of continental United States where those estates included property subject to taxation by a possession of the United States because of its situs in that possession. The Senate committee understood that

the estate tax did not apply to any citizen of Puerto Rico. It stated in connection with the amendment just described:

> Under existing law no credit is allowed against the Federal estate tax for death taxes paid to Puerto Rico or the Philippines. The existing law confines the credit to death taxes paid to the States, Territories, and the District of Columbia. This operates unjustly in the case of American citizens who are residents of the Philippines or who are residents of the United States but own property in the Philippines or Puerto Rico.

The careful omission of American citizens who are residents and citizens of Puerto Rico negatives any intention on the part of Congress to regard such persons as subject to the Federal estate tax.

The history of income taxation in Puerto Rico may tend to corroborate the conclusion reached herein. At one time the Federal income tax provisions were expressly made applicable to Puerto Rico, with the further provision that collections were to be separately made of those taxes, which were then to be used solely by or for the benefit of Puerto Rico. Later, the Puerto Rican Legislature was allowed to repeal the provisions of the Federal revenue laws applicable to it and to substitute in their stead an income tax law of its own. That situation continued thereafter, and subsequent Federal income tax laws have had no application to Puerto Rico. Also, the Legislature of Puerto Rico has imposed its own death duties.

Reviewed by the Court.

*Decision will be entered under Rule 50.*