COMMISSIONER OF INTERNAL REVENUE

v.

RIVERA'S ESTATE et al.

No. 202, Docket 22896.

United States Court of Appeals Second Circuit.

Argued May 6, 1954.

Decided June 10, 1954.

H. Brian Holland, Ellis N. Slack, Lee A. Jackson and I. Henry Kutz, Washington, D. C., for petitioner.

Claude A. Hope and Eugene Blanc, Jr., New York City, for respondent; Guillermo E. Gonzalez and Jorge L. Cordova, San Juan, Puerto Rico, of counsel.

Before CLARK, FRANK and MEDINA, Circuit Judges.

MEDINA, Circuit Judge.

This appeal involves a federal estate tax assessed against the estate of Clotilde Santiago Rivera, deceased, and is taken from the decision of the Tax Court entered on March 2, 1953, determining that there is an overpayment in estate tax in the amount of $69,327.87, which was paid after the mailing of the notice of deficiency. The question presented on this appeal is whether or not Congress exempted from the federal estate tax assets situated in the continental United States belonging to the estate of a citizen of the United States and of Puerto Rico domiciled in Puerto Rico at the time of his death.

Decedent was born in Puerto Rico on December 14, 1872, died testate in New York City on January 9, 1949, and was buried in Puerto Rico; he was domiciled in Puerto Rico throughout all of his life up to and including the date of his death. He was made a citizen of the United States by virtue of the provisions of the Second Organic Act,[1] sometimes known as the Jones Act, and remained a citizen of the United States at the date of his death.

Decedent's will, executed on December 10, 1948, was protocolized on January 13, 1949, and was thereafter recorded and registered in accordance with the laws of Puerto Rico in the Registry of Wills in the Supreme Court of Puerto Rico. On that date, letters testamentary under the will were issued by the District Court of San Juan, Puerto Rico, to Jose Hernandez Usera and Guillermo E. Gonzalez, the executors named in the will. No ancillary or other proceedings for the probate of the will or for the appointment of any executors or representatives of the decedent have ever been had.

On March 31, 1949, the executors filed with the appropriate authorities in Puerto Rico an inventory of the assets and liabilities of the estate of the decedent as of the date of death.

On June 27, 1950, the executors filed with the Collector of Internal Revenue for the Second District of New York an estate tax return showing no tax to be due. The certificates representing the stocks and bonds listed under Schedule B of the estate tax return were physically located within the United States on the date of decedent's death, as were also the items of miscellaneous property listed under Schedule F. The value of the stocks and bonds included in Schedule B of the estate tax return was $307,338.23, and the value of the items included in Schedule F was $10,278.85, adding up to a total value of $317,617.08 for all the property of decedent which was reported as having been physically located within the United States at the time of his death.

The Commissioner determined an estate tax deficiency of $69,327.87 against the executors of decedent's estate, and explained the deficiency in his "Report of Examination of Estate Tax Return," dated April 17, 1951, as follows:

"The deficiency here results principally from computing tax liability on the estate of a citizen and resident of Puerto Rico as that of a nonresident not a citizen pursuant to Section 861 of the Internal Revenue Code [26 U.S.C.A.]."

1. Act of March 2, 1917, 39 Stat. 951.

The executors paid to Puerto Rico its succession tax in the sum of $53,067.16 on February 8, 1952.

The executors petitioned the Tax Court for a redetermination of the deficiency, and the Tax Court overruled the Commissioner's determination and held that the federal estate tax is not applicable to the estate of a citizen of the United States who was also a citizen of Puerto Rico and who was domiciled in Puerto Rico at the time of his death. Accordingly, the Tax Court decided that no estate tax was due and ordered a refund of the sum of $69,327.87, which taxpayer had paid after the mailing of the notice of deficiency. The opinion of the Tax Court is reported in 19 T.C. 271.

In Estate of Smallwood, 1948, 11 T.C. 740, the Tax Court held that the estate of a citizen of the United States and Puerto Rico domiciled in Puerto Rico at the time of his death, was not taxable under Part II of the estate tax law, Sections 810 to 851, I.R.C., 26 U.S.C.A., relating to the estates of "Citizens or Residents of the United States". The Commissioner acquiesced in that decision. In the case before us, the Commissioner seeks to tax such an estate under Part III of the estate tax law, Sections 860 to 865, I.R.C., 26 U.S.C.A., relating to the estates of "Nonresidents Not Citizens of the United States". No question arises concerning the power of Congress to make the estate tax law applicable to the estates of citizens of Puerto Rico; that Congress has such power is freely conceded by the taxpayer. The sole question is, has Congress exercised that power? We think it has not.

Puerto Rico was ceded to the United States in 1899 by the Treaty of Paris,[2] which terminated the Spanish American War. Beginning with the enactment on April 12, 1900, of the First Organic Act,[3] known as the Foraker Act, Congress established the basic policy of fiscal independence for Puerto Rico, i.e., that in general the Puerto Ricans should have the duty of supporting their own government and the correlative right of having all of their sources of revenue available for insular expenses. Accordingly, Sections 12 and 36 of the First Organic Act provided that all governmental expenses and salaries of officials should be paid out of Puerto Rican revenues, and Section 14 thereof expressly provided that the internal revenue laws of the United States "shall not have force and effect in Porto Rico."[4] In 1917, Congress conferred full United States citizenship collectively upon all Puerto Rican citizens as of and from April 11, 1899, by the enactment of the Second Organic Act, supra, which was "the practical equivalent of a state Constitution" for Puerto Rico. Camunas v. Porto Rico Railway, Light & Power Co., 1 Cir., 1921, 272 F. 924, 928. It continued and extended the policy of the First Organic Act of imposing upon Puerto Ricans full responsibility for their own local government, and giving them the right to have all sources of revenue tapped for insular expenses. The Second Organic Act further expressly excepted all internal revenue laws of the United States from operation in Puerto Rico.[5]

Courts do not favor repeals of statutes by implication. Where a gen-

---

**2.** Ratifications were exchanged and the treaty proclaimed on April 11, 1899. 30 Stat. 1754.

**3.** 31 Stat. 77.

**4.** The Senate Committee in charge of the First Organic Act had found, after a careful examination of the facts, "that our internal revenue laws, if applied in that island, would prove oppressive and ruinous to many people and interests; that to undertake to collect our heavy internal revenue tax, far heavier than Spain ever imposed upon their products and

vocations, would be to invite violations of the law so innumerable as to made prosecutions impossible, and to almost certainly alienate and destroy the friendship and good will of that people for the United States." Downes v. Bidwell, 1901, 182 U.S. 244, 284, 21 S.Ct. 770, 786, 45 L.Ed. 1088.

**5.** Sec. 9. That the statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Porto Rico as in the

eral policy of government has been well established by statutes and recognized in court decisions, "a clear expression of the intention of Congress" is required to justify a reversal. Ex parte Crow Dog, 1883, 109 U.S. 556, 572, 3 S.Ct. 396, 27 L.Ed. 1030. "It is a canon of statutory construction that a later statute, general in its terms and not expressly repealing a prior special statute, will ordinarily not affect the special provisions of such earlier statute. In other words, where there are two statutes, the earlier special and the later general,—the terms of the general broad enough to include the matter provided for in the special,— * * * the general will not be understood as repealing the special, unless a repeal is expressly named, or unless the provisions of the general are manifestly inconsistent with those of the special." Rodgers v. United States, 1902, 185 U.S. 83, 87, 22 S.Ct. 582, 583, 46 L.Ed. 816. And in the case of United States v. Sixty-seven Packages of Dry Goods, 1854, 17 How. 85, 93, 58 U.S. 85, 93, 15 L.Ed. 54, the Supreme Court stated that "In the interpretation of our system of revenue laws, which is very complicated, * * * this court has not been disposed to apply with strictness the rule which repeals a prior statute by implication, where a subsequent one has made provision upon the same subject, and differing in some respect from the former, but have been inclined to uphold both, unless the repugnancy is clear and positive, so as to leave no doubt as to the intent of Congress." See also United States v. Jackson, 1938, 302 U.S. 628, 58 S.Ct. 390, 82 L.Ed. 488; Saxonville Mills v. Russell, 1885, 116 U.S. 13, 6 S.Ct. 237, 29 L.Ed. 554.

Since the enactment of the Second Organic Act on March 2, 1917, Congress has twice amended the exception relating to the internal revenue laws,[6] without making the estate tax applicable. In addition, Congress has since that time made many general laws, including certain internal revenue laws (in addition to the direct amendments to the basic exception), applicable to Puerto Rico either by naming Puerto Rico specifically or using the term "possessions," or defining the term "state" so as to include Puerto Rico. When Congress in 1918 made the income tax law applicable to citizens of Puerto Rico, to the extent that their income was derived from sources within the United States, it did so in express terms, and, in contrast, there is a conspicuous lack of any corresponding legislation in relation to the estate tax. Furthermore, there is evidence that Congress itself regarded Part III of the estate tax law as being inapplicable to Puerto Rico. Section 210(e) of the bill H. R. 6712, 80th Congress, Second Session (known as the "Revenue Revision Act of 1948"), proposed the addition of a new Section 852 [7] which related directly to the taxation of the estates of Puerto Ricans.

---

United States, except the internal-revenue laws: *Provided, however*, That hereafter all taxes collected under the internal-revenue laws of the United States on articles produced in Porto Rico and transported to the United States, or consumed in the island shall be covered into the treasury of Porto Rico.

6. The first of these amendments is found in Section 329(c) of the Liquor Tax Administration Act of June 26, 1936, 49 Stat. 1957, 48 U.S.C.A. § 734a. This added Section 734a after 48 U.S.C.A. § 734, which contains the basic exception, and it specifically made applicable to Puerto Rico from and after August 27, 1935, all the provisions of the internal revenue laws relating to industrial alcohol imposed by 27 U.S.C.A. §§ 71–89.

The second amendment to the basic exception is found in Section 513 of the Philippine Trade Act of April 30, 1946, 60 Stat. 158, which directly amended the exception to read as follows: " * * * except the internal revenue laws other than those contained in the Philippine Trade Act of 1946: * * *." 48 U.S.C. A. § 734.

7. Sec. 852. Residents of Puerto Rico.
 In the case of the estate of a resident of Puerto Rico (other than such a resident who was at the time of his death a citizen of the United States and who was not, at the time he became such a citizen, a resident of Puerto Rico) the tax under this subchapter shall be imposed in the same manner as in the case of the

The House passed the bill on June 19, 1948, but the Senate adjourned without acting upon it, and the section was never enacted.

The first modern estate tax was imposed by the Revenue Act of 1916.[8] This Act, while imposing the tax upon the transfer of the "net estate" of every decedent, "whether a resident or nonresident of the United States", distinguished in defining "net estate" between the case of a "resident" and the case of a "nonresident," limiting the latter to "the value of that part of his gross estate which at the time of his death is situated in the United States",[9] less certain specified deductions. This general statutory scheme and this distinction between the estates of "residents" and "nonresidents" were continued in the succeeding Revenue Acts which reenacted the estate tax up to the effective date of the Revenue Act of 1934.[10]

The Revenue Act of 1934[11] added the category of "citizens" to the two classifications of estates which had theretofore existed throughout the history of the estate tax, namely, estates of "residents" and "nonresidents" of the United States. Thus, in lieu of the term "resident" under the Revenue Act of 1926, there was inserted the phrase "citizen or resident of the United States," and in lieu of "nonresident" there was inserted "nonresident not a citizen of the United States", as appears from Section 403[12] of the Revenue Act of 1934, which also similarly amended the provisions for the additional estate tax enacted by the Revenue Act of 1932.

The Commissioner argues that prior to the Revenue Act of 1934, the property situated in the United States belonging to estates of citizens of the United States and Puerto Rico, domiciled in Puerto Rico at the time of death, was in fact consistently taxed as the property of "nonresidents," and that, since the 1934 amendments to the estate tax law purported to extend, not to narrow, the scope of the estate tax, this administrative practice was incorporated into the Revenue Act of 1934 and subsequent amendments, and hence decedent's estate is taxable as the estate of a "nonresident not a citizen." In support of his argument, the Commissioner relies upon certain Treasury Regulations relating to

estate of a nonresident not a citizen of the United States.

8. 39 Stat. 756, §§ 200–212.

9. 39 Stat. 756, § 203(b).

10. Sections 402–403 of the Revenue Acts of 1918, c. 18, 40 Stat. 1057, and of 1921, c. 136, 42 Stat. 227; Sections 302–303 of the Revenue Acts of 1924, c. 234, 43 Stat. 253, and of 1926, c. 27, 44 Stat. 9; Section 401 of the Revenue Act of 1932, c. 209, 47 Stat. 169, imposing the additional estate tax.

11. 48 Stat. 680, 26 U.S.C.A.Int.Rev.Acts, page 659.

12. Section 403, 26 U.S.C.A.Int.Rev.Acts, page 760. Citizenship and Residence of Decedents.

(a) Section 303(a) of the Revenue Act of 1926, as amended, is amended by striking out "In the case of a resident" and inserting in lieu thereof "In the case of a citizen or resident of the United States".

(b) Section 303(b) of such Act, as amended, is amended by striking out "In the case of a nonresident" and inserting in lieu thereof "In the case of a nonresident not a citizen of the United States".

(c) Section 303(c) of such Act, as amended, is amended by striking out "in the case of a nonresident" and inserting in lieu thereof "in the case of a nonresident not a citizen of the United States".

(d) Section 303(d) and (e) of such Act, as amended, are amended by striking out the phrase "nonresident decedent" wherever such phrase appears in such subdivisions and inserting in lieu thereof in each case "nonresident not a citizen of the United States".

(e) Section 304(a) and (b) of such Act, as amended, are amended by striking out "nonresident" wherever such word appears and inserting in lieu thereof in each case "nonresident not a citizen of the United States".

(f) Section 403 of the Revenue Act of 1932 is amended by striking out "resident decedent" and inserting in lieu thereof "citizen or resident of the United States".

various Revenue Acts enacted prior to 1934 [13] and upon certain interdepartmental memoranda, all dated subsequent to 1934,[14] which the Commissioner concedes "were unpublished and were prepared for office use only." These memoranda, however, were not introduced in evidence by the Commissioner at the trial, and we are not certain that we can properly consider them in support of the Commissioner's position. In our view, we need not decide whether or not these memoranda are properly included in the record before this Court, for, assuming *arguendo* that they are, their purported effect cannot prevail in the face of the plain meaning of the words "nonresident not a citizen" and the specific rulings made by the Treasury since 1934,[15] all introduced in evidence by the taxpayer at the trial for the limited purpose of establishing an administrative practice, in which the Treasury consistently took the position that, in accordance with the express exception of the Organic Act of 1917, the estate tax law was not applicable to the estates of citizens and residents of Puerto Rico.

Since decedent was a citizen of the United States, we think that his estate cannot be taxed as that of a "nonresident not a citizen" under Part III of the estate tax law, Sections 860 to 865, I.R.C. The Commissioner's argument completely ignores the basic exclusion of the Organic Act of 1917, and the fact that there is nothing in either the Revenue Act of 1934 or its legislative history which indicates any intention on the part of Congress to deal with that exclusion. While we agree with the Commissioner that the purpose of the Revenue Act of 1934 was to broaden the coverage of the estate tax, we have been unable to find anything either in the changes in the estate tax law made by the Revenue Act of 1934, or in the committee reports or hearings relating thereto, which indicates that Congress intended to extend the estate tax law to Puerto Rico. The legislative history of Section 403 [16] of the Revenue Act of 1934 plainly establishes that its purpose was to bring within the ambit of the estate tax the property located in foreign countries of nonresident citizens of the United States, whose estates, to the extent that they

---

13. Treasury Regulations 37 (October, 1916, and May, 1917, ed.) relating to the Act of 1916; Treasury Regulations 37 (1919 Rev. and 1921 Rev.) relating to the Act of 1918; Treasury Regulations 63 relating to the Act of 1921; Treasury Regulations 68 relating to the Act of 1924; Treasury Regulations 70 (1926 ed.) relating to the Act of 1926; Treasury Regulations 70 (1929 ed.) relating to the Act of 1926, as amended by the Act of 1928.

14. Memorandum from Assistant Commissioner Norman A. Sugarman to Kenneth W. Gemmill, Acting Chief Counsel, Internal Revenue Service, dated August 7, 1953 (Estate of Clotilde Santiago Rivera); G. C. M. 21135, dated March 16, 1939 (Estate of Mario Mercado Montalvo); G. C. M. 24769, dated September 19, 1945 (Estate of Albert DeCaen Smallwood); G. C. M. 26008, dated May 3, 1949 (Estate of Albert DeCaen Smallwood); G. C. M. 26072, dated July 15, 1949 (Estate of Clotilde Santiago Rivera).

15. Letter, dated June 13, 1939, bearing symbols "MT-ET-NR-RR-42611-2d New York," signed by D. S. Bliss, Deputy Commissioner (Estate of Mario Mercado Montalvo); letter dated April 1, 1944, bearing symbols "MT-ET-RR," signed by D. S. Bliss, Deputy Commissioner (Estate of Julio R. Gonzalez); letter, dated February 13, 1945, bearing symbols "MT-ET-NRC-4-2nd New York," signed by D. S. Bliss, Deputy Commissioner (Estate of Cecilia Emanuelli y Amy de Santiago); letter, dated March 25, 1945, bearing symbols "MT-ET-NRC-4-2nd New York," signed by D. S. Bliss, Deputy Commissioner (Estate of Cecilia Emanuelli y Amy de Santiago); letter, dated October 31, 1947, bearing symbols "MT: ET:RR," signed by D. S. Bliss, Deputy Commissioner (Estate of Dolores Santiago viuda de Costa).

16. H.Rep.No.704, 73d Cong., 2d Sess., pp. 36–37 (1939–1 Cum.Bull. [Part 2] 554, 581–582); S.Rep.No.558, 73d Cong., 2d Sess., p. 46 (1939–1 Cum.Bull. [Part 2] 586, 621); Senate Hearings before the Committee on Finance on H.R. 7835, 73d Cong., 2d Sess., Part 6, pp. 215–221 (March 19, 1934).

contained assets abroad, had theretofore escaped taxation.[17]

In Estate of Smallwood, supra, the Tax Court held that the word "citizen," as used in Part II of the estate tax law, Sections 810 to 851, I. R. C., did not include a citizen of the United States who was also a citizen and resident of Puerto. Rico, but referred to "citizens residing beyond the limits of the United States, its territories, and possessions." We believe that the Tax Court correctly interpreted the statute. Similarly, it appears to us, contrary to the Commissioner's argument, that the committee reports and hearings relating to the Revenue Act of 1934 show that Congress did not intend to include Puerto Ricans within the phrase "nonresident not a citizen" as used in the amendments. Such terms as "foreign countries," "nonresident aliens," "foreign trade," "foreigners" and "real property located abroad," all of which recur throughout the committee reports, are not applicable to Puerto Ricans or to property located in Puerto Rico, and, therefore, Congress could not have had Puerto Ricans in mind when it referred to a "nonresident not a citizen" in connection with the estate tax, nor could it have had Puerto Rico in mind when it referred to "real property located abroad" or in "foreign countries."

After considering all of the pertinent legislation in the proper setting of its historical background, we have been unable to find "a clear expression of the intention of Congress" to depart from its previously expressed and implemented basic policy of fiscal independence for Puerto Rico, except in the manner and to the extent that we have mentioned above, nor have we been able to find any provision in the internal revenue statutory scheme which directs or permits the imposition of the assessed tax. When the framework and the interstices of the entire foregoing legislative pattern are analyzed, it seems to us that Congress never intended to make the estate tax law applicable to the estates of deceased Puerto Ricans.

Affirmed.

real property located in foreign countries was exempted from the estate tax. 48 Stat. 680, §404.

---

17. The bill as passed by the House included even real property located in foreign countries; however, in the Senate version and in the law as finally enacted