COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

Robert M. and Sally L. BILDER.

Robert M. and Sally L. BILDER, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE.

Nos. 13293, 13294.

United States Court of Appeals Third Circuit.

Argued Oct. 20, 1960.

Decided April 7, 1961.

Hastie, Circuit Judge, dissented.

Martin D. Cohen, Newark, N. J. (Cohen, Rosenbaum & Scher, Newark, N. J., of counsel, on the brief), for taxpayers.

Joseph Kovner, Washington, D. C. (Abbott M. Sellers and Howard A. Heff-ron, Acting Asst. Attys. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., on the brief), for Commissioner.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

Are rental payments for an apartment during a winter's stay in Florida, incurred, as the Tax Court of the United States found, "as a medical necessity and as a primary part of necessary medical treatment of a disease from which petitioner [taxpayer] was and still is suffering", deductible as a "medical expense" under Section 213 of the Internal Revenue Code of 1954, 26 U.S.C. § 213?

That is the primary question presented by the Commissioner of Internal Revenue's petition for review (No. 13,293) of the Decision of the Tax Court of the United States [1] which answered it in the affirmative.

The issue is novel in the sense that it has never been decided by the appellate courts of the United States. It must immediately be noted that the Commissioner concedes that under the "medical expense" provisions of Section 23(x) of the Internal Revenue Code of 1939, as added in 1942, 26 U.S.C. § 23(x), predecessor to Section 213 of the 1954 Code, the rental payments at issue were allowable deductions. As will subsequently be developed, the Commissioner contends that the effect of the 1939 Code provisions was changed by the addition of Section 213 (e) (1) (B) so as to narrow "the scope of the medical deduction so as to allow only transportation expenses for travel prescribed for health", and to preclude rental expenses.

The petition for review (No. 13,294) of Robert M. Bilder ("taxpayer") [2] presents a secondary issue as to whether the Tax Court correctly limited his rental deduction, as will subsequently appear.

1. The decision of the Tax Court is reported at 1960, 33 T.C. 155.

2. Mr. Bilder's wife, Sally, is also a petitioner here, but solely because she filed a joint return with her husband.

The critical facts as found by the Tax Court and not here disputed may be summarized as follows:

In 1954 taxpayer was engaged in the practice of law in Newark, New Jersey. He resided in a nearby town with his wife and three-year old daughter. He was then 43 years old. He had earlier suffered four coronary occlusions resulting in myocardial infarctions which restricted the flow of blood to his heart. The occlusions were suffered in the course of the disease of atherosclerosis which afflicted taxpayer.

"One of the most eminent heart specialists in the United States if not the world" advised taxpayer in December 1953 that he spend the winter months in a warm climate as part of the treatment of his disease and in order to prevent further heart attacks.[3] Taxpayer, his wife and infant daughter went to Fort Lauderdale, Florida which afforded the warm climate advised by his heart specialist. He rented an apartment there between January 1, 1954 and March 24, 1954 at a rental of $1500.00, which was less than the cost of a single room in a hotel. The apartment was in close proximity to a Fort Lauderdale hospital which had facilities to test taxpayer's blood to determine the correct dosage of an anticoagulant drug known as Dicumerol. One of the few doctors in Florida competent to supervise taxpayer's use of Dicumerol—then in limited use—practiced in Fort Lauderdale and taxpayer was under his care.

Taxpayer also rented an apartment in Fort Lauderdale from December 15, 1954 to February 10, 1955 at a rental for the period of $829.00. His wife and daughter accompanied him.

Taxpayer in his 1954 and 1955 income tax returns deducted as "medical care" expenses the respective Florida apartment rentals and $250.00 each year for transportation between Newark, New Jersey and Fort Lauderdale. The Commissioner disallowed the stated deductions and taxpayer resorted to the Tax Court which allowed the deductions claimed for transportation but only one-third of the apartment rentals, because of its view that "From the record we are unable to conclude that having his family in Florida with him was necessary as a part of the treatment of his disease."

Following the filing of the Tax Court's Findings of Fact and Opinion on October 26, 1959, taxpayer moved for leave to submit additional testimony on the score of the "medical necessity" of having his wife share his apartment with him in Florida, and appended thereto an affidavit of his medical expert to that effect. The Tax Court denied taxpayer's motion on November 6, 1959 and subsequently, on December 29, 1959 filed its Decision.

Taking first the issue presented by the Commissioner's petition for review as to whether rental payments of the nature here involved are allowable deductions as a "medical expense" under Section 213 of the Internal Revenue Code of 1954:

It may be noted, preliminarily, that the Commissioner does not challenge the

3. On the score of the medical advice given to taxpayer to winter in Florida the Tax Court made these factual findings:

"This advice was given him because of his personality characteristics. He is and was at the time the advice was given a hyperkinetic person with an unusual inner stress and tension. To confine him either at home or a hospital in the relatively cold climate of New Jersey through the winter months would have resulted in danger to his health from two sources. Such extended inactivity would have increased his inner stress and tension, which are medically accepted as tending to cause the recurrence of heart attacks in one who has previously suffered one or more such incidents. Mild exercise of the type not available while confined to home or hospital is required for such a person and was for petitioner in order that new vascular passages for blood to the heart may more readily and quickly develop. * * *

" * * * The primary objective of all his treatment and the advice given incidental thereto was the prevention of further myocardial infarction with resulting impairment or destruction of the functioning of his heart, thus prolonging his life. * * * " (Emphasis supplied). 33 T.C. at 156–157.

Tax Court's factual finding that it was necessary for the "medical care" of taxpayer that he winter in Florida. Nor does the Commissioner dispute that under Section 23(x) of the 1939 Revenue Code "nonhospital meals and lodging, incurred primarily for and essential to medical care" were allowable as "expenses of medical care".

The crux of the Commissioner's position, as he puts it, "is essentially that * * * lodging expenses are nondeductible personal living expenses, · and that Section 213 of the 1954 Code * * * by expressly authorizing a deduction for transportation expenses, necessary to medical care, excludes allowance for lodging or meals." Section 23(x) of the 1939 Code, it may be noted, did not make specific provision for the deduction of transportation expenses but they were allowed by judicial construction of Section 23(x), with the acquiescence of the Commissioner.

The provisions of Section 23(x) of the 1939 and Section 213 of the 1954 Code, other than with respect to the deductibility of transportation expenses, are identical. To afford a ready comparison they are set forth in adjacent columns as follows:

### 1939 Code

"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

* * *

"(x) Medical, dental, etc., expenses. Expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse or a dependent. * * *

* * * *

"The term 'medical care,' as used in this subsection, shall include amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance). * * *"

### 1954 Code

"§ 213. Medical, dental, etc., expenses

"(a) Allowance. of deduction. —There shall be allowed as a deduction the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent * * *.

* * * * *

"(e) Definitions.—For purposes of this section—

"(1) The term 'medical care' means amounts paid—

"(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or

"(B) for transportation primarily for and essential to medical care referred to in subparagraph (A)."

The Commissioner's contention is that "the express proviso [subparagraph (B) ] allowing only transportation costs *suggests* that Congress intended to limit the deduction for expenses of travel to exclude the costs of meals or lodging as allowable expenses includible in 'medical care'." (Emphasis supplied.)

In apparent recognition that he is leaning on the most slender of reeds in this

respect, the Commissioner further resorts to the House and Senate committee reports which state that subparagraph (B) "clarifies existing law in that it specifically excludes the deduction of any meals or lodging while away from home receiving medical treatment." It may be added that Treasury Regulations on Income Taxes (1954 Code), Section 1.-213–1(e) (1) (iv) so provide.[4]

At this juncture it should be stated that the Tax Court in the instant case refused to consider the House and Senate reports stating:

"In view of the clarity of the wording of section 213 of the 1954 Code, we see no reason to resort to congressional history for its meaning."

To the foregoing must be added that the Tax Court in Carasso v. Commissioner, 1960, 34 T.C. 1139, reviewed by the Court, with one judge concurring in the result and two dissenting, "disapproved" of its failure to examine legislative history in the instant case. The Tax Court, however, did not disapprove or repudiate the allowance of transportation and partial apartment rental made here, indicating that it construed the legislative history to permit allowance of living expenses in proper cases. That indication is buttressed by the fact that in disallowing living expenses in Carasso to a taxpayer who, on his doctor's advice, following two operations in which the major portion of his stomach was removed, took a nine-day trip to Bermuda for convalescence, the Tax Court expressly stated *"We express no opinion as to whether meals and lodging expenses might be deductible in other circumstances."* (Emphasis supplied.)

The sum of taxpayer's view is that Section 213(e) (1) (A) defines "medical care" in the same terms as Section 23(x) and since the latter permitted deductions for lodging expenses (apartment rental here), Congress, by re-enacting its language into Section 213(e) (1) (A), provided for the continuance of such deductions; further, had Congress intended to make lodging expenses (and meals) nondeductible in the 1954 Code it could have so specified in Section 213, and finally, the congressional committee reports "contain ambiguities and, if literally applied, produce absurd results."

This summation of the views of the parties may appropriately be made at this juncture:

Both agree, as earlier stated, that Section 23(x) of the 1939 Code permitted allowance of rental payments as "medical care" in proper cases.[5] Further, both agree that Section 213(e) (1) (A) of the 1954 Code defines "medical care" in the same terms as Section 23(x) of the 1939 Code. The Commissioner, however, is of the view that "on its face" the additional

---

4. The Treasury Regulations read in relevant part as follows:

"(iv) Expenses paid for transportation primarily for and essential to the rendition of the medical care are expenses paid for medical care. However, an amount allowable as a deduction for 'transportation primarily for an essential to medical care' shall not include the cost of any meals and lodging while away from home receiving medical treatment. For example, if a doctor prescribes that a taxpayer go to a warm climate in order to alleviate a specific chronic ailment, the cost of meals and lodging while there would not be deductible. On the other hand, if the travel is undertaken merely for the general improvement of a taxpayer's health, neither the cost of transportation nor the cost of meals and lodging would be deductible. If a doctor prescribes an operation or other medical care, and the taxpayer chooses for purely personal considerations to travel to another locality (such as a resort area) for the operation or the other medical care, neither the cost of transportation nor the cost of meals and lodging (except where paid as part of a hospital bill) is deductible."

5. Edward A. Havey, 1949, 12 T.C. 409; L. Keever Stringham, 1949, 12 T.C. 580, reviewed by the Tax Court, acq. 1950–2 Cum.Bull. 4, affirmed Stringham v. C. I. R., 6 Cir., 1950, 183 F.2d 579; Embry's Estate v. Gray, D.C.W.D.Ky.1956, 143 F.Supp. 603, appeal dismissed on motion of appellant-District Director of Internal Revenue, 6 Cir., 1957, 244 F.2d 718.

definition of transportation costs as "medical care" in subparagraph (B) of Section 213(e) (1) "suggests" a statutory exclusion of lodging and meal [6] expenses incurred while receiving "medical care" away from home (except where paid as a hospital bill). He further urges that the House and Senate committee reports relating to subparagraph (B) [7] "expressly" state that it makes such an exclusion, and that the impact of the legislative history requires us to construe (B) to effect such a result.

We need not be detained by the Commissioner's view that subparagraph (B) "on its face" "suggests" the limitation which he urges, or a congressional intent to effect it. Indeed "on its face", subparagraph (B), by its explicit terms, extends the deduction allowances for "medical expenses" to include "transportation primarily for and essential to medical care referred to in subparagraph (A)."

That brings us to the Commissioner's contention that the legislative history of subparagraph (B) requires a judicial construction that it effects the limitation which he urges.

Since in our view there is nothing in the terms of (B) which effects the limitation urged, the sum total of the Commissioner's position is that what is dispositive of the issue is not what the statute provides but what the legislative history says; otherwise stated, a statute can be nullified to the extent of repeal by its legislative history.

The Commissioner has not cited to us any precedent for his concept on this score nor has an exhaustive research on our part disclosed any judicial support for it.

The Supreme Court has time and again had occasion to consider vexing problems involving statutory construction. Earlier decisions indicated that where the terms of a statute are clear and unambiguous there is no requirement to consider legislative history in their construction, giving rise to what has been called the "plain-meaning rule."[8] That "rule" however has given

6. The question as to allowability of deductions for meals is not here in issue since taxpayer made no claim with respect to them.

7. In both the House and Senate Reports on the 1954 Code, the following appears (H.Rep. No. 1337, 83d Cong., 2d Sess., pp. 30, A60 (3 U.S.C.Cong. & Adm.News (1954) 4017, 4197); S.Rep. 1622, 83d Cong., 2d Sess., pp. 35, 219–220 (3 U.S.C. Cong. & Adm.News (1954) 4621, 4856)):
 "Subsection (e) defines medical care to mean amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of diseases or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or for transportation primarily for and essential to medical care. The deduction permitted for 'transportation primarily for and essential to medical care' clarifies existing law in that it specifically excludes deduction of any meals and lodging while away from home receiving medical treatment. For example, if a doctor prescribes that a patient must go to Florida in order to alleviate specific chronic ailments and to escape unfavorable climatic conditions which have proven injurious to the health of the taxpayer, and the travel is pre-scribed for reasons other than the general improvement of a patient's health, the cost of the patient's transportation to Florida would be deductible but not his living expenses while there. However, if a doctor prescribed an appendectomy and the taxpayer chose to go to Florida for the operation not even his transportation costs would be deductible. The subsection is not intended otherwise to change the existing definitions of medical care, to deny the cost of ordinary ambulance transportation nor to deny the cost of food or lodging provided as part of a hospital bill."
 The Senate Report, supra (S.Rep. 1622, p. 35, 3 U.S.C.Cong. & Adm.News (1954) 4666) recommending enactment of the language added in the governing statute also explained:
 "A new definition of 'medical expenses' is provided which allows the deduction of *only transportation expenses for travel prescribed for health, and not the ordinary living expenses incurred during such a trip.*" (Commissioner's emphasis.)

8. United States v. Hartwell, 1868, 6 Wall. 385, 396, 18 L.Ed. 830, where it was said: "If the language [of the statute] be clear it is conclusive. There can be no con-

way in recent years to the present teaching that legislative history will be examined by the courts "* * * to see whether that [it] raises such doubts that the search for meaning should not be limited to the statute itself." Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 1955, 348 U.S. 437, 444, 75 S.Ct. 489, 492, 99 L.Ed. 510.[9] In Territory of Alaska v. American Can Co., 1959, 358 U.S. 224, 226–227, 79 S.Ct. 274, 3 L.Ed.2d 257 it was said that courts will take "judicial notice" of legislative history.

We come now to consideration of the legislative history of subparagraph (B) and its asserted impact on (B) and the related provisions of Section 213.

Applicable to such consideration are these well-settled principles of statutory construction.

▮ "Like other extrinsic aids to construction, their [legislative history] use is to 'solve, but not to create an ambiguity' ", United States v. Shreveport Grain & El. Co., 1932, 287 U.S. 77, 83, 53 S.Ct. 42, 44, 77 L.Ed. 175.

Legislative history of a statute may not be taken as giving to it "a meaning not fairly within its words", St. Louis, I. M. & S. Ry. v. Craft, 1915, 237 U.S. 648, 661, 35 S.Ct. 704, 707, 59 L.Ed. 1160; nor add new terms to it, United States v. Shreveport Grain & El. Co., supra.

▮ "In expounding a statute, we must * * * look to the provisions of the whole law, and to its object and policy," United States v. The Heirs of Boisdoré, 1850, 8 How. 113, 122, 12 L.Ed.

1009; a construction that "would produce incongruous results" is to be avoided, Mastro Plastics Corp. v. N. L. R. B. 1956, 350 U.S. 270, 286, 76 S.Ct. 349, 360, 100 L.Ed. 309. (Emphasis supplied.)[10]

▮ "The long and well-settled construction" of an act, plus its reenactment without change of "the established interpretation", are "most persuasive indications" that the judicial construction "has become part of the warp and woof of the legislation", Francis v. Southern Pacific Co., 1948, 333 U.S. 445, 450, 68 S.Ct. 611, 613, 92 L.Ed. 798.

▮ Construction of statutes, which would make them a "dead letter" are not favored, Gemsco, Inc. v. Walling, 1945, 324 U.S. 244, 255, 65 S.Ct. 605, 89 L.Ed. 921; nor are repeals by implication, FTC v. A. P. W. Paper Co., 1946, 328 U.S. 193, 202, 66 S.Ct. 932, 90 L.Ed. 1165.

▮ "[L]iberalizations of the law in the taxpayer's favor, * * * begotten from motives of public policy, * * * are not to be narrowly construed", Helvering v. Bliss, 1934, 293 U.S. 144, 151, 55 S.Ct. 17, 20, 79 L.Ed. 246.

▮ Remedial statutes should be construed in favor of those intended to be benefited, Helvering v. Bliss, supra; Hollander v. United States, 2 Cir., 1957, 248 F.2d 247, 251.

Prefacing application of the principles stated we will direct our attention to the public policy evidenced in the enactment of the initial legislation making provision for deduction of "medical care" expenses.

Section 23(x) of the 1939 Code was added to that Code by Section 127(a) of the Revenue Act of 1942.

---

struction where there is nothing to construe. * * * *" To the same effect see United States v. Shreveport Grain & El. Co., 1932, 287 U.S. 77, 83, 53 S.Ct. 42, 44 where it was said: "In proper cases, such reports [legislative] are given consideration in determining the meaning of a statute, but only where that meaning is doubtful."

9. In Harrison v. Northern Trust Co., 1943, 317 U.S. 476, 479, 63 S.Ct. 361, 363, 87 L.Ed. 407 it was said: "But words are inexact tools at best and for

that reason there is wisely no rule of law forbidding resort to explanatory legislative history no matter how 'clear the words may appear on "superficial examination".' United States v. American Trucking Assn's, 310 U.S. 534, 543–544, [60 S.Ct. 1059, 1063, 1064, 84 L.Ed. 1345]. See also United States v. Dickerson, 310 U.S. 554, 562 [60 S.Ct. 1034, 1038, 84 L.Ed. 1356]."

10. Cited with approval and applied in N.L.R.B. v. Lion Oil Co., 1957, 352 U.S. 282, 288, 77 S.Ct. 330, 1 L.Ed.2d 331.

The Senate Finance Committee Report (S.Rep. No. 1631, 77th Cong. 2d Sess.) outlined the purpose of Section 23(x) as follows at page 6:

"This allowance is recommended in consideration of the heavy tax burden that must be borne by individuals during the existing emergency *and of the desirability of maintaining the present high level of public health and morale*";

and at pages 95–96:

"The term 'medical care' is *broadly* defined to include amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body. It is not intended, however, that a deduction should be allowed for any expense that is not incurred primarily for the prevention or alleviation of a physical or mental defect or illness." (Emphasis supplied.)

The Tax Court and the United States district courts and courts of appeals, as earlier stated, construed Section 23(x) to permit deductions of transportation, lodging and meal costs as "medical expenses" in proper cases, and the Commissioner, in Treasury Regulations 111, Sec. 29.23(x)–1, accorded with these decisions.

Moreover, in Revenue Ruling 55–261, 1955–1 Cum.Bull. 307, the Commissioner expressly recognized the deductibility under Section 23(x) of costs of travel, meals and lodging incurred primarily for and essential to "medical care".

The foregoing establishes that the entire legislative concept of "medical care" allowances as provided by the amended 1939 Code was based on a broad public policy—"the desirability of maintaining the present high level of public health and morale", and that the courts and the Commissioner gave vitality to the public policy.

That the public policy stated prevailed when the 1954 Code [11] was under consideration is evidenced by the fact that it doubled the ceiling of deductible "medical expenses" to $2,500 per person and $10,000 per family and reduced the prevailing deduction for expenses only in excess of five percent of gross income to three percent of gross income.

It is significant that the Undersecretary of the Treasury (Marion B. Folsom), when he appeared before the Senate Committee on Finance at a hearing to consider the 1954 Code "medical expense" provisions, submitted a document in which he called attention to the changes above mentioned and stated as to them and subparagraph (B) as follows:

"Overall effect of proposed changes is to *liberalize and extend relief in real hardship situations due to heavy medical expense but curb deductions* of ordinary or luxury living expenses *in guise of medical costs*." (Emphasis supplied.)

The document set forth clearly demonstrates that the draftsman and sponsor (the Treasury Department) of subparagraph (B) conceived its design, intent, and content to effect a limitation only of allowance "of ordinary or luxury living expenses *in guise of medical costs*". (Emphasis supplied). Nothing was said in the document which would warrant its interpretation of subparagraph (B) as precluding allowance of living expenses incurred, as the Tax Court found they were in the instant case, "as a medical necessity and as a primary part of necessary medical treatment of a disease from

11. The public policy with respect to deductibility of "medical expenses" has been expanded in sweep by amendments to the 1954 Code since its enactment. In 1958, subsection (g) was added to Section 213. It increased from $2,500 to $15,000 the maximum allowance for "medical expenses" where taxpayer has attained the age of 65 and is disabled, and made similar provision with respect to his disabled spouse of the same age. In 1960, subsection (a) of Section 213 was amended to permit, within established limitations, "medical expenses" of dependent parents, who had attained the age of 65, of either or both taxpayers, without application of the excess of 3 percent of gross income proviso.

which petitioner [taxpayer] was and still is suffering."

It is a fair assumption that the congressional committees acted on the premise asserted by the Treasury Department in sponsoring subparagraph (B) although in their reports they failed to advert to that premise, namely, "curb" deductions "in guise of medical costs", and instead used sweeping terms which encompassed living expenses while away from home even though they were incurred "as a medical necessity and as a part of necessary medical treatment."

 The committee reports are ambiguous when they state that "The deduction permitted for 'transportation primarily for and essential to medical care' *clarifies existing law* in that it specifically excludes deduction of any meals and lodging while away from home receiving medical treatment", in view of the fact that the courts and the Commissioner had concurred in the construction of "existing law" (Section 23(x)) as permitting allowance of such expenses. (Emphasis supplied.) The ambiguity is emphasized by the fact that Congress in enacting the "medical care" provisions of the 1954 Code (Section 213(e) (1) (A)) used language identical with that in the "medical care" provisions of the 1939 Code (Section 23(x)), and it must be assumed to have had knowledge of the unanimous judicial and administrative construction of Section 23(x).

Where there is unanimity in the construction of the terms of a statute it is an anomaly to say that it requires clarification.

The Senate committee report can scarcely be said to be helpful in construing subparagraph (B) to which it relates. It makes this statement with reference to subparagraph (B):

"A *new* definition of 'medical expenses' is provided which allows the deduction of only transportation expenses for travel prescribed for health, and not the *ordinary living expenses* incurred during such a trip." (Emphasis supplied.)

A reading of subparagraph (B) fails to disclose the slightest basis for the committee report statement that it provides "a new definition of 'medical expenses'" which precludes allowance of "ordinary living expenses" in travel prescribed for health.

Subparagraph (B) merely adds to the category of "medical care" defined in subparagraph (A), "amounts paid"—

"for transportation primarily for and essential to medical care referred to in subparagraph (A)".

What was said in the Senate committee report concerning "ordinary living expenses" makes for confusion and not for clarification.

"Ordinary living expenses" have never been regarded as deductible medical expenses. The 1939 Code was construed by the courts to permit deduction only of those living costs which could be identified as "extraordinary" because they were incurred as "a medical necessity and as a primary part of necessary medical treatment." The case books abound with instances, decided under the 1939 Code, where living expenses were not allowed where the travel was not a part of "medical care", and were recognized to be "in guise of" such care.

Treasury Regulations 29.23(x)–1 relating to Section 23(x), consistent with judicial construction, provided in applicable part as follows:

"Allowable deductions under section 23(x) will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. Thus, payments for * * * *travel primarily for and essential to the rendition of the medical services or to the prevention or alleviation of a physical or mental defect or illness, are deductible.*" (Emphasis supplied.)

It should be stressed that subparagraph (A) of Section 213(e) (1) is the counterpart of the 1939 Code provisions under which living expenses were allowed

when they were part of "medical care." The legislative history of Section 213 makes no reference to subparagraph (A) nor has the Commissioner made reference here to that subparagraph despite the fact that subscription to his view of the impact of the legislative history would operate to nullify it as far as travel allowance (other than transportation expense) is concerned.

The Commissioner's insistence that we are required to give a literal interpretation to the phrase "ordinary living expenses" in the legislative committee reports runs counter to interpretations which he has made of this phrase in the Treasury Regulations relating to Section 213.

For example, a literal interpretation of the committee reports would require disallowance of the "cost of food and lodging" except when paid *"as part of a hospital bill"*. (Emphasis supplied.)

Treasury Regulations 1.213–1(e) (v), however, provide that allowance may be made for meals and lodging "in an institution other than a hospital", such as "a special school for a mentally or physically handicapped individual", or a "home for the aged" where "medical or nursing attention" is accorded.

"The extent to which expenses for care in an institution other than a hospital shall constitute medical care", says the Regulations cited, "is primarily a question of fact which depends upon the condition of the individual and the nature of the services he receives (rather than the nature of the institution)".

■ The foreseeable circumstances that at a given time and a given place overcrowding in hospitals or institutions would preclude use of their facilities and necessitate non-hospital and non-institutional shelter and meals in a private home, hotel or apartment, does not seem to have been considered by the Commissioner. Nor has he given consideration to the fact, of which judicial notice may

be taken, that hospital and institutional costs are so high as to be prohibitive to a large percentage of those in need of "medical care".

In considering institutional care "other than a hospital" the Regulations enunciate the criteria that "The extent to which expenses for care * * * shall constitute medical care is primarily a question of fact which depends upon the condition of the individual and the nature of the services he receives (rather than the nature of the institution)". That criteria was emphasized by the Courts, and the Commissioner, in applying Section 23(x), and if the Commissioner's construction of the impact of the legislative history on the 1954 Code provisions permits his inclusion of non-hospital care, providing it is institutional in nature, such history cannot logically be said to bar its application in private facility cases, such as the apartment involved in the instant case.

On this score it must be noted that the Tax Court in the instant case made this specific factual finding:

"Their sojourns [taxpayer and his wife] in Fort Lauderdale during the years at issue were not vacations; *they were taken as a medical necessity and as a primary part of necessary medical treatment of a disease* from which petitioner [taxpayer] was and still is suffering." (Emphasis supplied.)[12]

This factual finding is not disputed by the Commissioner.

It may be interposed that the Commissioner's position here is inconsistent. He has formally acquiesced in this case to the Tax Court's holding that taxpayer's transportation expenses are deductible[13] and indicated nonacquiescence with its ruling making partial allowance of apartment rental.[14] It is true that he premises his position on legislative history but realistically if it was necessary for taxpayer to go to Florida as "medical care" it was equally necessary as part of

12. 33 T.C. at 157.

13. 1960 Int.Rev.Bull. No. 16, at 9.

14. 1960 Int.Rev.Bull. No. 33, at 7.

that "medical care" that he receive shelter while he was there.

The Commissioner's position calls to mind the old nursery rhyme:

Mother, may I go out to swim?
Yes, my darling daughter:
Hang your clothes on a hickory limb
But don't go near the water.

What has been said brings us to the application here of the earlier stated principles of statutory construction.

■ To begin with, the impact of legislative materials must be evaluated in the light of the whole legislative scheme, the purpose sought to be achieved and the particular statutory provisions under scrutiny.

As was said in Universal Camera Corp. v. NLRB, 1951, 340 U.S. 474, 489, 71 S.Ct. 456, 465, 95 L.Ed. 456 where legislative history was considered,

"[T]he fair interpretation of a statute is often 'the art of proliferating a purpose', * * * revealed more by the demonstrable forces that produced it than by its precise phrasing."

In Ozawa v. United States, 1922, 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199 the Supreme Court pointed out that in construing the express terms of a statute, *if* "by giving the words their natural significance * * * this leads to an unreasonable result plainly at variance with the policy of the legislation as a whole, we must examine the matter further. We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, *sacrificing, if necessary, the literal meaning in order that the purpose may not fail*." (Emphasis supplied.)

■ It follows, of course, if in the construction of the express terms of a statute we must "give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail", that language used in legislative history must be subjected to a similar test, and its "literal meaning" sacrificed "in order that the purpose" of the legislation "may not fail".

■ In the instant case, as has already been pointed out, the "medical expense" provisions of the 1954 Code evidence a broad public policy to maintain "the present high level of public health and morale" and the statute is clearly remedial in nature.[15] Such a statute, effecting "liberalizations of the law in the taxpayer's favor * * * begotten from motives of public policy * * *" is not only "not to be narrowly construed" but is to be broadly construed in the taxpayer's favor.[16]

Assuming, arguendo, that the "literal meaning" of the legislative history here is what the Commissioner says it is, that "meaning" must be "sacrificed", under the Supreme Court's teaching, in order that "the policy" of Section 213 may not be frustrated and that its "purpose may not fail."

■ Moreover, since the Commissioner's view of the effect of the legislative history, if subscribed to, would require a construction which would make it "a dead letter", it is not to be "favored".[17]

Again, the substance of the Commissioner's contention that the legislative history adds "new terms to the statute" must be rejected under the settled rule that legislative history of a statute may not be taken as giving it "a meaning not fairly within its words"[18] nor add new terms to it.[19]

■ In our view the most that can be said of the legislative history here is that

15. Hollander v. Commissioner, 3 Cir., 1955, 219 F.2d 934.

16. Helvering v. Bliss, 1934, 293 U.S. 144, 151, 55 S.Ct. 17, 20, 79 L.Ed. 246.

17. Gemsco, Inc. v. Walling, 1945, 324 U.S. 244, 255, 65 S.Ct. 605, 612, 89 L.Ed. 921.

18. St. Louis, I. M. & S. Ry. v. Craft, 1915, 237 U.S. 648, 661, 35 S.Ct. 704, 707, 59 L.Ed. 1160.

19. United States v. Shreveport Grain & El. Co., 1932, 287 U.S. 77, 83, 53 S.Ct. 42, 44, 77 L.Ed. 175.

it creates an ambiguity with respect to the statutory provisions and that being so it cannot be availed of under the teaching that the use of legislative history is to "*solve,* but not to *create,* an ambiguity." [20] The least that can be said of the legislative history is that if it has the impact on Section 213 urged by the Commissioner it would effect a construction of the statute that "would produce incongruous results" and that, we have been told, is to be avoided.[21]

 Under the holding in Francis v. Southern Pacific Co., supra [333 U.S. 445, 68 S.Ct. 613], since Section 213(a), (e)(1) (A) of the 1954 Code is a re-enactment of Section 23(x) of the 1939 Code, and the courts (and the Commissioner) over a twelve year period had construed Section 23(x) to permit allowance of lodging and meals as "medical expenses" where they were incurred as "medical care", "the long and well-settled construction" of Section 23(x), plus its re-enactment without change of "the established interpretation" provide "most persuasive indications" that the judicial construction "has become part of the warp and woof" of Section 213.

 What the Commissioner is really urging here is the repeal "by implication", by the legislative history, of subparagraph (A) of Section 213 to the extent that it, as the counterpart of Section 23(x), permitted allowance of lodging and meals as "medical expenses" in proper cases. The ready answer is that repeals by implication are not favored,[22] and the applicable rule is that "where a general policy of government has been well established by statutes and recognized in court decisions, 'a clear expression of the intention of Congress' is required to justify a reversal. Ex parte

Crow Dog, 1883, 109 U.S. 556, 572, 3 S.Ct. 396, 27 L.Ed. 1030." [23]

We have already expressed the view that the legislative history here is ambiguous and that on that score what was said in FCC v. Columbia Broadcasting System, 1940, 311 U.S. 132, 61 S.Ct. 152, 85 L.Ed. 87 seems particularly appropriate.

It was there stated (311 U.S. at pages 136–137, 61 S.Ct. at page 154):

"What was said in Committee Reports, and some remarks by the proponent of the measure in the Senate, are sufficiently ambiguous * * * to invite mutually destructive dialectic, but not strong enough either to strengthen or weaken the force of what Congress has enacted." [24]

With reference to the Senate and House committee reports here, viewing them in the most favorable light "we cannot say that the legislative history * * * is so persuasive * * * " [25] as to achieve the effect on the construction of Section 213 urged by the Commissioner.

Pertinent here is what was said in Acker v. Commissioner, 6 Cir., 1958, 258 F.2d 568, 576, affirmed 1959, 361 U.S. 87, 80 S.Ct. 144:

"It seems to us a policy of first order that taxpayers under this 'government of laws and not of men' be entitled to expect that whenever the Congress intends to exact a penalty for a particular omission, this will be done by unequivocal language embodied in a statute regularly enacted conformably to the Constitution, *and not by a committee report that is neither voted on by the members of both Houses nor submitted to the*

20. Ibid.

21. Mastro Plastics Corp. v. NLRB, 1956, 350 U.S. 270, 286, 76 S.Ct. 349, 360.

22. FTC v. A.P.W. Paper Co., 1946, 328 U.S. 193, 202, 66 S.Ct. 932.

23. Commissioner v. Rivera's Estate, 2 Cir., 1954, 214 F.2d 60, 62–63. To the

same effect see Fawcett v. Commissioner, 2 Cir., 1945, 149 F.2d 433, 435.

24. Witness the divergent views on the score of the legislative history of Section 213 in Carasso v. Commissioner, 1960, 34 T.C. 1139.

25. Commissioner v. Acker, 1959, 361 U.S. 87, 93, 80 S.Ct. 144, 148, 4 L.Ed.2d 127.

*President for his approval."* (Emphasis supplied.)

We are aware, of course, as the foregoing indicates, that the Court in Acker was concerned with the construction of a penalty statute and that such statutes are strictly construed against the government. However, we are here dealing with a remedial statute which under the applicable rule is to be construed in favor of the taxpayer, so that what was said in Acker is pertinent here.

On the score of the Commissioner's attempt here to effect judicial amendment of the "medical expenses" statute, what was said in Helvering v. Rebsamen Motors, Inc., 8 Cir., 1942, 128 F.2d 584 is likewise pertinent.

Said the Court in that case at page 588:

"It seems to us, however, that neither the taxing authorities nor the courts are justified in virtually amending a taxing act because they are of the opinion that *Congress may have had* or should have had a different *intention* than that which was expressed in *the act.* There would seem to be nothing unreasonable in a rule of construction which requires legislative bodies, in enacting taxing statutes, to use language of sufficient clarity to be understood by an ordinarily intelligent taxpayer as well as by those who are required to administer and to interpret the statutes." (Emphasis supplied.)

We can find no better way to conclude our discussion of the Commissioner's petition for review than to quote what was said by Chief Justice Taney more than a century ago in United States v. The Heirs of Boisdoré, supra, 8 How. at page 122, on the score of statutory construction:

"In expounding a statute, we must * * * *look to the provisions of the whole law, and to its object and policy."* (Emphasis supplied.)

Looking "to the provisions of the whole law, and to its object and policy" here we cannot give to the construction of the "medical expense" statute a meaning that would preclude allowance of lodging and meals incurred in the course of travel "as a medical necessity and as a primary part of necessary medical treatment of a disease from which petitioner [taxpayer] was and still is suffering", as the Tax Court factually determined in the instant case.

If Congress had wanted to effect the limitation urged by the Commissioner "it would have been easy to have said so in express terms; and because it did not do so, we are led irresistibly to the conclusion that it did not intend * * *." to do so. Tillson v. United States, 1879, 100 U.S. 43, 46, 25 L.Ed. 543.

There remains for disposition taxpayer's petition for review of the Tax Court's limited allowance of his Florida apartment rentals.

It will be recalled that the Tax Court allowed taxpayer a deduction of only one-third of his rentals because of its view that "From the record we are unable to conclude that having his family in Florida with him was necessary as a part of the treatment of his disease." The Tax Court, as earlier stated, denied taxpayer's motion for leave to submit additional testimony on the score of the "medical necessity" of having his wife share his apartment with him. The motion was made subsequent to the filing of the Tax Court's Findings of Fact and Opinion but prior to the rendition of its Decision. It was accompanied by an affidavit of Dr. Irving S. Wright, taxpayer's heart specialist,[26] which stated in part:

"I could not in good conscience have sent Mr. Bilder, or any patient who had a comparable history of multiple myocardial infarctions to Florida by himself for a period of months without his wife or a nurse to stay with him. I would most cer-

---

26. In its Opinion the Tax Court described Dr. Wright as "one of the most eminent heart specialists in the United States, if

not the world." The record discloses that he is a former president of the American Heart Association.

tainly have testified to this effect without qualification had the question been raised during my testimony."

It must here be noted that in the Tax Court the Commissioner, as evidenced by his brief, premised his contention of non-deductibility of the expenditure for rent on his view that "An expenditure for rent is not within the term medical care as defined in the 1954 Code and cannot be deducted as a medical expense", and his disallowance of taxpayer's transportation costs to Florida, on the ground that it was not "primarily for and essential to medical care."

In connection with the foregoing it must also be said that at the trial in the Tax Court, the Commissioner's theory of his case was that taxpayer's travels to Florida and his stays there were not "for the treatment, prevention, alleviation or cure of any disease" and accordingly did not constitute "medical care". It may also be pointed out, in view of the Commissioner's position here (1) in not challenging the Tax Court's finding that taxpayer's travels to Florida were necessary as "medical care"; (2) in acquiescing in the allowance of taxpayer's transportation expenses to Florida as "medical care"; and (3) in confining his contention here to the non-allowability of rental deductions under the 1954 Code, the Commissioner, nevertheless in the Tax Court, via his counsel, stated that " * * * it would be inconsistent to allow him the transportation to Florida and not to allow him the rent, our position being that these trips to Florida were not necessary at all."

The statement referred to gives emphasis to our earlier characterization of the Commissioner's position as "inconsistent."

Be that as it may, the record discloses that attention was not specifically directed in the Tax Court to the issue of percentage allocations of taxpayer's rental payments in Florida. The Commissioner, indeed, states in his Reply Brief here "that, if this Court should hold that any part of the lodging expense is deductible,

the case should be remanded to the Tax Court to permit the taxpayer to present evidence that it was medically necessary for taxpayer's wife to accompany her husband to Florida during the periods involved and that she would not otherwise have done so."

In making this statement, the Commissioner, however, asserts that in any event "one-third of the rent allocated to the child's occupancy of the Florida apartment would not be deductible and the taxpayer does not contend that it was medically necessary for the child to be with her father in Florida."

On review of the record we see no compelling reason to remand to the Tax Court for a determination of the issue of the extent of the rental allocations.

We are of the opinion that the record as already made, affords sufficient basis for a fact-finding that it was a necessary part of the "medical care" of taxpayer that his wife and child should accompany him to Florida, and that in the interest of expeditious disposition of this litigation, and in view of its over-all remedial aspects, we should make that finding now.

Taxpayer, according to the Stipulation of Facts in the record, suffered four heart attacks—the first in March, 1946 while he was serving as a Lieutenant Commander in the United States Navy; the second in March, 1951; the third in December, 1952 and the fourth in April 1953; Dr. Wright, because "it had been noted that practically all of his [taxpayer's] attacks had occurred during the winter months", recommended that he winter in Florida "as a medical necessity" and as a "highly important part of his therapy"; taxpayer was a "hyperkinetic individual—under a good deal of inward stress and tension."

The record, as stated affords ample basis for a factual finding that it was necessary to taxpayer's "medical care" to have his wife accompany him to Florida, and stay with him there. We can take judicial notice of the fact that one who has had four heart attacks.

should not live alone, particularly when, as here, he is a "hyperkinetic individual".

We can take judicial notice, too, of the anxieties which would afflict a father, concerned with the well-being of his three-year old daughter, should they be separated by distances as great as that between Florida and New Jersey (the home of taxpayer), and that the obviation of such anxieties was an imperative necessity here to the "medical care" of taxpayer because of the damaging effect their impact would have had on his mental and physical being, particularly in view of his "hyperkinetic" personality.

In making this finding we have taken into consideration the element that the presence of this three-year old child could have been of minimal consequence with respect to the amount of rental paid by taxpayer for his apartments. It is supported by the Tax Court's finding that "The record indicates that the cost of a hotel room for petitioner [taxpayer] alone during his stays in Florida during the years at issue would have exceeded the total rentals for the apartment in which he and his family lived. * * * "

For the reasons stated the Decision of the Tax Court will be vacated and the cause remanded with directions to proceed in accordance with this opinion.

HASTIE, Circuit Judge (dissenting).

This decision is extraordinary in that the majority insist that a recent enactment of Congress means exactly the opposite of what the Senate and House Committee reports on the bill and such other statements as there are on the point in the legislative history say it means. In fact, both committee reports anticipate the exact case which is before us and say explicitly that expenses for meals and lodging are not deductible.

"The deduction permitted for 'transportation primarily for and essential to medical care' clarifies existing law in that it specifically excludes deduction of any meals and lodging while away from home receiving medical treatment. For ex-

ample, if a doctor prescribes that a patient must go to Florida in order to alleviate specific chronic ailments and to escape unfavorable climatic conditions which have proven injurious to the health of the taxpayer, and the travel is prescribed for reasons other than the general improvement of a patient's health, the cost of the patient's transportation to Florida would be deductible but not his living expenses while there." H. Rept. No. 1337, 83d Cong. 2d Sess. at A60; S.Rept. No. 1622, 83d Cong. 2d Sess. at 219–220.

The House report is equally as explicit at another point:

"A new definition of 'medical expenses' is provided which incorporates regulations under present law and also provides for the deduction of transportation expenses for travel prescribed for health, but not the ordinary living expenses incurred during such a trip." H.Rept. No. 1337, supra, at 30. See also S.Rept. No. 1622, supra, at 35.

When the proposed new tax legislation was being considered in the Senate committee, the Undersecretary of the Treasury, Marion B. Folsom, advised the committee that the new definition of medical care was intended to "permit deduction of cost of transportation necessary for health but not ordinary living expenses incurred during trip". Hearings before Senate Finance Committee on H.R. 8300, 83d Cong. 2d Sess., part 1, p. 103. He added that this was one of the "principal [amendatory] provisions". In these circumstances, this is not a case in which the intention of Congress, as indicated by the legislative history, is in any way doubtful or ambiguous. It is plain that Congress was repeatedly advised by its responsible committees in charge of the legislation and by the executive department responsible for assisting in the presentation and explanation of tax legislation that the new definition of medical care was intended to preclude the deduction of living expenses during necessary absences from home for medical care.

If this plain intention of Congress is to be ignored, it must be because what Congress actually said in the statute is clearly contrary to what it meant. I think the majority recognize that this is their difficult task. I also think that analysis of the relevant legislation clearly shows that the language of the 1954 Code carries out the indicated legislative purpose to preclude the deduction of living expenses and does not in any way contradict it.

The fundamental mistake of the majority, which persists throughout their analysis and, in my view, invalidates it, is that they wholly ignore one of the two controlling sections of the 1954 Code. Specifically, the majority do not take into account the language of Section 262 of the 1954 Code, 26 U.S.C. § 262, which replaces Section 24(a) (1) of the 1939 Code, 26 U.S.C. § 24(a) (1). Section 24(a) (1) had provided that "in computing net income no deduction shall in any case be allowed in respect of—(1) personal, living, or family expenses, except extraordinary medical expenses deductible under Section 23(x) * * *." Section 262 of the 1954 Code substituted for the old Section 24(a) (1) the following language: "Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses." Thus, Section 262 eliminates the former special reference to extraordinary medical expenses and provides instead that no deduction of living expenses whatever shall be allowed unless "expressly provided in this chapter". This means that, when a taxpayer asserts that living expenses during absences from home necessary for medical care are deductible under the 1954 Code, he must carry the burden imposed by Section 262 of pointing out where such living expenses are "expressly" included among the deductible items related to medical care. This cannot be done here because there simply is no such express provision.

The basic authorization of medical deductions, as it appears in Section 213(a), is stated in general terms:

"(a) Allowance of deduction.—There shall be allowed as a deduction the expenses paid during the taxable year * * * for medical care of the taxpayer * * *."

Obviously this language does not "expressly provide" for any deduction of living expenses. Indeed, pages of the majority opinion are devoted to a reasoned argument to justify construing the general statutory reference to "expenses * * * for medical care" as intended to include living expenses. To me such an argument only emphasizes the basic error. The very reason that elaboration is necessary is that Congress made no "express provision" for the deduction of living expenses.

Even if the decisive requirement of Section 262 were absent, I think Section 213(e) indicates, as the Tax Court has recently held, that living expenses are not deductible. Max Carasso, 1960, 34 T.C. 1139. I have already referred to the basic language of Section 213(a) which in general terms allows a deduction for "expenses paid * * * for medical care * * *." Standing alone this language could be interpreted in various ways. It might mean only the cost of medication, medical services and the like. It could be interpreted to include maintenance of the sick in hospitals, at home or elsewhere. It could include travel for medical care or travel for convalescence. The point here is simply that the language is not precise or specific as to the situations it covers. It requires interpretation. Accordingly, Congress added the interpretative Section 213(e) which reads:

"(e) Definitions.—For purposes of this section—

"(1) The term 'medical care' means amounts paid—

"(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or

"(B) for transportation primarily for and essential to medical care referred to in subparagraph (A)."

This definition says nothing about living expenses. The majority characterize this omission as "a slender reed" upon which to lean. But it is those who take the position that the statute authorizes a deduction of living expenses who require affirmative support for their position.

Section 213(a) does not define expenses for medical care. Section 213(e) purports to define the term and in so doing says nothing about living expenses. What the majority have to do is to construe the reference in Section 213(e) (1) (A) to amounts paid for "diagnosis, cure, mitigation, treatment, or prevention of disease" as inferentially including living expenses on trips away from home which are necessitated by considerations of health. Of course it can sensibly be argued that such an inclusive interpretation should be given these words. There is precedent for that interpretation in the Tax Court's treatment of the general language of the 1939 Code. L. Keever Stringham, 1949, 12 T.C. 580, affirmed per curiam Stringham v. C. I. R., 6 Cir., 1950, 183 F.2d 579. But, whether one agrees with that interpretation or not,[1] it is not obvious on the face of Section 213 of the 1954 Code. To the contrary, the separate specific provision of Section 213(e) (1) (B) allowing a deduction of transportation expenses essential to medical care suggests that the immediately preceding language of Section 213(e) (1) (A) is intended to include only those things which we conventionally describe as medical bills.

Since the face of the statute does not make either of the opposing constructions unreasonable, this is a case in which resort to legislative history is particularly appropriate. It has already been pointed out that the legislative history shows

plainly that Congress did not intend to allow a deduction for living expenses.

In summary, I find the conclusion of the majority erroneous for two distinct reasons. First, Section 262 precludes the deduction of living expenses in the absence of any express provision therefor. There is no mention of living expenses in the section which, in the view of the majority, permits such a deduction. Second, the conclusion of the majority is reached by giving Section 213(a) a meaning that is not made obvious by a mere reading of that subsection and its definitional supplement, Section 213(e). Therefore, it is proper to resort to legislative history which plainly shows that Congress intended that these provisions should preclude the deduction of living expenses. For these reasons, I think the decision of the Tax Court should be reversed and the deficiency determined without any deduction of living expenses.

---

1. In the Stringham case itself three judges of the Tax Court dissented, believing that the general language of the 1939 Code did not cover living expenses. And the majority opinion in that case recognized

that "this section is susceptible to a variety of conflicting interpretations" and necessitates an inquiry into legislative history and congressional intent. 12 T.C. at page 583.