Everett F. and Margaret L. Glaze v. Commissioner.
Glaze v. Commissioner
Docket No. 80354.
United States Tax Court
T.C. Memo 1961-244; 1961 Tax Ct. Memo LEXIS 105; 20 T.C.M. (CCH) 1276; T.C.M. (RIA) 61244; August 30, 1961
*105 Tuition paid by petitioners for attendance of their son at a private military school, which provided no special treatment or training for mentally retarded children, held not to be deductible as medical expense under section 213, I.R.C. 1954. Everett F. Glaze, pro se, 8732 Dewey Dr., Garden Grove, Calif., John Schessler, Esq., for *106 the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined a deficiency in income tax against petitioners for the taxable year 1957 in the amount of $210.96. The only issue for decision is whether the sum of $807.70 paid by petitioners to the Southern California Military Academy (hereafter referred to as the Academy) as tuition for their son is deductible under section 213 of the Internal Revenue Code of 1954 as a medical expense. Findings of Fact Some of the facts have been stipulated and are found as stipulated. Petitioners, husband and wife, filed their joint income tax return for the taxable year 1957 with the district director of internal revenue at Los Angeles, California. Petitioners' minor son was enrolled and in attendance at the Academy during the calendar year 1957, and petitioners paid the Academy $807.70 as their son's tuition. According to the brochure published by the Academy the tuition covered the cost of academic instruction, special tutoring when needed, military instruction, transportation, first aid in the infirmary, midday lunches, athletic instruction, use of athletic equipment, *107 gymnasium, and swimming pool, athletic contests, school paper, sightseeing trips, and other activities. It did not cover payments to doctors or psychiatrists. Petitioners enrolled their son in the first grade at the Academy after the public elementary school in the city where they resided requested his withdrawal from that school during 2 consecutive school years. The first year the request for withdrawal was made after he had been in attendance only 2 or 3 days; the second year, he had been in attendance for a number of months before the withdrawal request was made. On both occasions the withdrawal request was initiated because of the son's failure to comprehend the materials taught and his inability to adjust himself to school activities. Following their son's withdrawal from the public school in 1954, petitioners were interviewed by a number of private schools and finally the Academy agreed to accept their son. He attended the Academy from 1954 through 1957. The Academy is a private school for boys extending through the ninth grade and emphasizing traditional military-type discipline. It does not provide special services or treatment for students who are mentally retarded. Although *108 it maintains its own infirmary with one trained nurse, it caters to only ordinary sicknesses which can be treated by a nurse, and any care requiring more than 1 day in its beds must be paid for by the parents in addition to the tuition. The school will give special attention to retarded readers, but this also must be paid for in addition to the tuition. There is no evidence that petitioners paid the Academy any special amounts in addition to the tuition. Petitioners' son was examined by a psychiatrist not connected with the school during his first year at the Academy, but the psychiatrist was unable to help the boy and suspecting brain damage, suggested a thorough examination at the Pacific State Hospital. Petitioners followed this suggestion but the examination revealed nothing conclusive except possibly that the boy was of limited intelligence and that organic brain damage might be the cause. There were no corrective measures suggested and the boy has had no medical treatment with respect to his mental deficiencies subsequent to his examination at the Pacific State Hospital. There was no special medical attention or treatment given to petitioners' son during 1957 at the Academy *109 beyond the normal treatment given to all students. Opinion The only issue is whether the amount paid by petitioners in 1957 as tuition for their son at a private military school is deductible as a medical expense under section 213, I.R.C. 1954. [1]
The pertinent parts of section 213 read as follows: (a) Allowance of Deduction. - There shall be allowed as a deduction the expenses paid during the taxable year * * * for medical care of the taxpayer, his spouse, or a dependent * * *
(e) Definitions. - For purposes of this section - (1) The term "medical care" means amounts paid - (A) for diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body * * * Respondent contends that the tuition paid by petitioners represented the ordinary cost of education for their son and did not include payments for medical or psychiatric treatment and was therefore a nondeductible personal expense under section 262. [2]
*110 Petitioners appeared pro se at the trial and did not file a brief, so we are not too certain what their contentions are. However, we assume from statements made by Everett at the trial that petitioners contend that the amount involved had to be paid by them to enable their mentally retarded son to obtain any sort of an education that would permit him to live as a normal person in the future, and that the payments were made because of the son's mental condition and therefore qualified as medical expenses. The only competent evidence offered, in addition to the brochure published by the Academy which was attached to the stipulation of facts as an exhibit, was the oral testimony of petitioner Everett F. Glaze; so we are without satisfactory evidence even that petitioners' son was mentally or physically handicapped. But even if we assume that the son was mentally retarded, we could not find for petitioners on the record before us because to do so would require us to conclude, without more, that tuition paid by parents to a private school for the education of a child who is unable to adjust to and remain in public schools qualifies as a medical expense under section 213. We do not think *111 sections 213 and 262 permit such a conclusion. L. Keever Stringham, 12 T.C. 580 (1949), affd. 183 F. 2d 579 (C.A. 6, 1950). Section 262 provides that except as otherwise expressly provided, no deduction is allowed for personal, living, or family expenses. The cost of educating one's children is normally a nondeductible personal or family living expense. So in order to prevail here, petitioners have to rely on a provision of the Code expressly allowing the deduction. [3] They rely on section 213.
Section 213 expressly *112 allows a deduction for amounts paid during the taxable year for "medical care" as defined therein. It has long been held that to be deductible as an expense for medical care there must be a direct or proximate relationship between the expense incurred and "medical care" as defined in the statute, and the expense must have been incurred primarily for a purpose included within that definition. Edward A. Havey, 12 T.C. 409 (1949); L. Keever Stringham, supra; Robert M. Bilder, 33 T.C. 155 (1959), affirmed in part and reversed in part 289 F. 2d 291 [C.A. 3, 1961).[4] In order to deduct their son's tuition, petitioners here have the burden of proving the direct relationship between the tuition paid and an objective contemplated by the statutory definition of medical care, and that it was paid primarily to accomplish such objective.
Certain criteria for determining this issue have been developed in the cases cited above, included among *113 which are the principal purpose for which the expenditure was made, whether it was made on the advice of a physician, whether the expenditure had a direct relationship to the treatment of a specific disease or a physical or mental condition, and whether the treatment could reasonably be expected to effect the diagnosis, cure, mitigation, or prevention of a specific disease, or affect any structure or function of the body. Here, admittedly none of the amount in issue was paid to doctors or psychiatrists, or for hospital facilities, medicines, or medical equipment. There is no evidence that any doctor or physician recommended that the boy be sent to a private military school for the "diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body," or that his attendance at the school would accomplish any of the purposes mentioned in the definition. We are at best left to conjecture that attendance at the school would in some way "affect" the "function" of the boy's brain. This is not sufficient to carry petitioners' burden of proof. The Academy provided no special psychiatric or medical treatment for any of its *114 students beyond limited treatment for ordinary illnesses by a trained nurse, and no specific charge was made for the latter. Nor did the Academy encourage enrollment of mentally retarded boys, nor did it purport to offer any benefits for mentally retarded students over that afforded by any private school, which because of a higher ratio of faculty to students, might give more individual attention to its students than could be given in public schools. There is no evidence that the boy's attendance at the Academy had as its objective mental or physical therapy. Under these circumstances it cannot be said that the expense involved qualifies as a medical care expense. It is therefore nondeductible as a personal living expense under section 262. It could be argued that the last two sentences of section 1.213-1(e)(1)(v)(a), Income Tax Regs., quoted in full in the margin, [5] would permit the deduction of the amounts here involved because if it is assumed that petitioners' son was mentally retarded, the evidence indicates that the free public schools in essence refused to be responsible for his care and education; the Academy undertook these responsibilities at *115 a cost to petitioners, and the primary reason for the son's attendance at the Academy was to qualify him for as normal a life in the future as possible. But this interpretation would require removing the words "special school" and "institution," as used in those last two sentences of subparagraph (a) of the above section of the regulations, from the context of the entire section of the regulations and stripping them of the qualifications imposed in the remainder of the section. We do not think this would be a correct interpretation of the regulations and we would be doubtful of its consistency and validity if so interpreted. See Rev. Rul. 58-280, 1958-1 C.B. 157. *116 Decision will be entered for the respondent. Footnotes
1. All section references are to the 1954 Code unless otherwise indicated.↩
2. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
3. The definition of medical care in section 213(e) of the 1954 Code is substantially the same as that in section 23(x) of the 1939 Code, except in one particular not pertinent here. Frank S. Delp, 30 T.C. 1230 (1958). We do not believe the differences in section 262 of the 1954 Code and section 24(a) of the 1939 Code, relating to the nondeductibility of personal living expenses, as discussed in the dissenting opinion of Judge Hastie in Commissioner v. Bilder, 289 F. 2d 291 (C.A. 3, 1961), and the opinion in Carasso v. Commissioner, 292 F. 2d 367↩, (C.A. 2, 1961) would change the outcome of this case.
4. The Tax Court's opinion in Bilder was disapproved by this Court on a point not material here in Max Carasso, 34 T.C. 1139 (1960), affd. 292 F. 2d 367↩ (C.A. 2, 1961).
5. Income Tax Regs., sec. 1.213-1(e) Definitions - (1) General. * * * (v) The cost of in-patient hospital care (including the cost of meals and lodging therein) is an expenditure for medical care. The extent to which expenses for care in an institution other than a hospital shall constitute medical care is primarily a question of fact which depends upon the condition of the individual and the nature of the services he receives (rather than the nature of the institution). A private establishment which is regularly engaged in providing the types of care or services outlined in this subsection shall be considered an institution for purposes of the rules provided herein. In general, the following rules will be applied: (a) Where an individual is in an institution because his condition is such that the availability of medical care (as defined in subdivisions (i) and (ii) of this subparagraph) in such institution is a principal reason for his presence there, and meals and lodging are furnished as a necessary incident to such care, the entire cost of medical care and meals and lodging at the institution, which are furnished while the individual requires continual medical care, shall constitute an expense for medical care. For example, medical care includes the entire cost of institutional care for a person who is mentally ill and unsafe when left alone. While ordinary education is not medical care, the cost of medical care includes the cost of attending a special school for a mentally or physically handicapped individual, if his condition is such that the resources of the institution for alleviating such mental or physical handicap are a principal reason for his presence there. In such a case, the cost of attending such a special school will include the cost of meals and lodging, if supplied, and the cost of ordinary education furnished which is incidental to the special services furnished by the school. Thus, the cost of medical care includes the cost of attending a special school designed to compensate for or overcome a physical handicap, in order to qualify the individual for future normal education or for normal living, such as a school for the teaching of braille or lip reading. Similarly, the cost of care and supervision, or of treatment and training, of a mentally retarded or physically handicapped individual at an institution is within the meaning of the term "medical care".↩