*Decision will be entered under Rule 50.*

MARTIN J. LICHTERMAN AND MARY CONNELL LICHTERMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75671. Filed December 29, 1961.

---

*W. S. Miller, Jr., Esq.*, for the petitioners.
*George L. Hudspeth, Esq.*, for the respondent.

ATKINS, *Judge:* The respondent determined a deficiency in income tax for the taxable year 1955 in the amount of $1,585.74. The issue for decision is whether the respondent erred in disallowing as medical expense amounts paid to a school in Arizona attended by the petitioners' son who was afflicted with asthma, and a portion of transportation and other expenses incurred by the parents in visiting the son.

FINDINGS OF FACT.

Some of the facts are stipulated and are incorporated herein by this reference.

The petitioners are husband and wife residing in Memphis, Tennessee. They filed a joint Federal income tax return for the year 1955 with the district director of internal revenue at Nashville, Tennessee. Martin J. Lichterman will hereinafter be referred to as the petitioner.

The petitioners' son Thomas C., hereinafter referred to as Tommy, who was 10 years old in 1955, had had a longstanding asthmatic condition which was of such severity that his growth had been retarded about 20 percent below normal. He was allergic to ragweed, house dust, and spring pollens and as a consequence his condition was more severe in the spring, winter, and fall seasons than in the summer. Sudden changes of temperature affected him. His condition was such that he required regular adult care and supervision, since in the event of an acute asthmatic attack it was necessary that he be

furnished skilled care and special equipment. It was necessary to keep oxygen in the home at all times because he frequently needed it. He had psychological and psychic trauma caused by the illnesses, and he required almost constant hospitalization during certain seasons of the year. In the winter of 1953–1954 he was either in a hospital or at home under an oxygen tent approximately 90 percent of the time. During the winter months he required hospitalization on an average of about 1 week out of every month.

The child was quite emotional and his emotions had an adverse effect upon his condition. The psychological effect upon Tommy of these seizures, illnesses, and stunting of growth was to cause him to become withdrawn and to feel that his parents did not care for him as much as they did for their other children. Although the child was enrolled in a parochial school, his illness was such that he could not attend school in Memphis.

The petitioner consulted a number of doctors in Memphis and other parts of the country with respect to his son's asthmatic and psychological conditions. Dr. F. P. Allen who was treating Tommy for his asthmatic condition in 1954, concluded that his treatment was failing because of the climatic conditions in Memphis. Climate is a necessary factor in the mitigation and treatment of asthma, and asthmatic patients are frequently sent to Arizona or elsewhere for a period to effect a recovery so that they may be able to return to their homes. Accordingly, Dr. Allen recommended that Tommy be sent to Arizona for such purpose.

To carry out the recommendations of Dr. Allen, the petitioner took a trip to Arizona in 1954 and spent 3 or 4 days looking for a place to send Tommy. He was unable to locate any place which would take him, other than schools or hospitals, and he did not want to send him to a hospital. He investigated all the schools in the Tucson area and finally decided to send him to Treehaven School. While in Tucson the petitioner called Dr. Allen on the telephone and described the school, whereupon Dr. Allen approved sending Tommy there. The doctor's approval was based upon the benefit he believed Tommy would receive from the climate. The educational facilities did not enter into his recommendation. Dr. Allen considered that medically it would be more beneficial to Tommy, both from the standpoint of his asthmatic condition and also his psychological problem, to associate with boys and girls of his age, than to be confined in a hospital or sanatarium. Dr. Allen also advised the parents to visit Tommy there to help his morale, including his psychological condition.

The petitioner entered Tommy in Treehaven School in September 1954. Tommy was dissatisfied and his parents telephoned him several times a week. He constantly requested that he be taken home.

In April 1955 Tommy's mother, the petitioner Mary Connell Lichterman, made a trip from Memphis to Tucson to visit Tommy for the purpose of making him satisfied to stay. He returned home at the end of May 1955 and spent the summer in Memphis. Dr. Allen permitted Tommy to return to Memphis during the summer months because he could withstand the climate in Tennessee in the summertime and because psychologically it was good for him to be at home. In September 1955 Tommy returned to Treehaven School, accompanied by the petitioner. This was necessary because Tommy would not go unless he was accompanied. It was also necessary for the petitioner to stay with him 4 or 5 days in order gradually to make him satisfied to stay. During that time the petitioner visited Tommy twice a day and took him out to eat and to the movies. Tommy went home for Christmas 1955 and returned to Treehaven School alone. Tommy was classed as a full-time student during 1955 while attending the school.

Treehaven School, located in the suburbs of Tucson, is primarily an educational institution, having a nursery school, a kindergarten, and grades one through eight. It teaches its students the usual academic courses that would be taught in a publicly supported school, such as reading, writing, arithmetic, spelling, etc. It has an average of about 175 students per year, ranging in ages from 3 to 14 years. The school is owned and directed by William L. Schneider and his wife, Florence. It caters to and cares for ill children who have noncontagious diseases and who could possibly be benefited by what Tucson and Treehaven have to offer. Florence Schneider has a doctorate from Bryn Mawr College in the field of sociology and social work and is qualified to supervise the emotional needs of the children. The school's housemothers were especially trained in dealing with asthmatic children, and Schneider and his wife were experienced in taking care of such children. The school has a room or infirmary to take care of the asthmatic children. It has an average of about 30 boarding students of which approximately one-half attend the school for health reasons.[1]

[1] The brochure of Treehaven School contains the following with respect to the promotion of health and availability of medical facilities:

"Treehaven School is located in Tucson, the City of Sunshine. Here is an ideal physical environment for young bodies. A maximum of sunshine and a 2,500-foot elevation produce warm, dry days and cool, restful nights—health-givers to all children. The well child can build his body further and the delicate child can gain new strength.

"Young children in Tucson can spend practically all of their free time outdoors. They do not have to battle the elements, as do the children in less favored climates. Snow and rain become novelties to them.

"Tucson has become a well-known medical center. The finest doctors are available. The number of specialists in every field is impressive. The city has very fine hospitals. One, the Tucson Medical Center, is within two minutes of the School.

"Treehaven School aims to promote good health. It concentrates in its health program, as well as in its educational program, on the very young. It is often in this young age group that symptoms manifest themselves. It is best to meet any disturbance to good

When Tommy entered Treehaven School his parents advised the school officials that he was at Treehaven because of an asthmatic condition, and that he had deep psychological problems. Letters were sent to the school by Dr. Allen giving instructions that Tommy was to be regularly treated by a Tucson physician, and his medical records were turned over to a local physician where he was treated regularly. In addition, he was regularly treated by a clinical psychologist. While the petitioner was in Tucson he made arrangements with a doctor for a hospital room in case Tommy had an attack while he was there.

During the year 1955 the petitioners paid Treehaven School the sum of $2,509.59 with respect to Tommy. The school does not have any breakdown of the amount received, its records having been lost. During that year the charge made by the school for day students was $630 per school year. That fee included tuition, books, luncheon, incidentals, and transportation. If any of those services were not used there was no reduction in the tuition. During the year 1955 the all-inclusive charge for a boarding student per school year of 8 months was $2,100. This amount included board, lodging, tuition, riding, swimming, laundry, books, and all other costs except "medical and personal allowance." Of the $2,509.59 received by the school from the petitioners, $2,100 constituted such charge for Tommy as a boarding student. The remainder of $409.59 constituted a payment for "medical and personal allowance," of which $350 represented payment to a local private medical doctor and a private clinical phychologist for services rendered to Tommy.

In 1955 the petitioners expended $331.32 representing the cost of two round trips by airplane for Tommy from Memphis to Tucson. The petitioner expended $165.66 for one round trip plane ticket for himself from Memphis to Tucson in accompanying Tommy in September 1955. The petitioners also spent an additional amount of $828.30 in connection with visiting Tommy in Tucson. This amount included a round trip airplane ticket at a cost of $165.66 for the petitioner Mary C. Lichterman when she visited Tommy in April 1955, an amount of approximately $250 expended by her for living expenses while there for a period of about 2 weeks, an amount of about $80 which the petitioner expended for living expenses while in Tucson for 4 or 5 days when he accompanied Tommy to school, an

health in these early years before the trouble becomes too deep-rooted. Thus delicate children can be helped before serious health problems develop.

"Certification by the family physician is required as a condition for entrance, whether to the residence or to the day program. Vaccination and other immunization procedures are prerequisites. Daily inspection is an integral part of the program. Parents can arrange for a periodic check-up by any doctor of their choice or by a school physician. The children are directed along the road of good health habits. Educational experience reveals that children who are unwilling to learn such habits, learn them easily and willingly when the learning is part of a process engaging comrades of like years. * * *"

amount of about $125 expended by the petitioner Mary C. Lichterman to rent a car while in Tucson, and an amount of about $45 expended by the petitioner for such purpose while he was there. Since the school was in the suburbs of Tucson, it was necessary for the petitioners to obtain transportation from their hotel to the school and they rented cars in lieu of paying taxicab fares.

In their joint income tax return for the year 1955, the petitioners reported total medical expenses of $4,671.41, which included the amount of $2,509.59 paid to Treehaven School and the amount of $1,325.28 which was described as cost of transportation to Tucson in connection with Tommy.

In the notice of deficiency the respondent determined that the amount of $2,509.59, which he described as tuition, room and board for Tommy, did not constitute a medical expense. He also determined that $828.30 of the claimed transportation expense did not constitute proper medical expense, denominating it "Excessive amount for travel." He allowed $496.98 of the transportation expense as a proper medical expense, this being the cost of the two round trips from Memphis to Tucson for Tommy and the one round trip for the petitioner in accompanying Tommy to the school in September 1955. As a consequence the respondent determined that the petitioners did not have medical expenses in excess of 3 percent of their adjusted gross income and that therefore they were not entitled to any deduction on account of medical expenses.

The petitioners have six children. In 1954 they had four children. Tommy is the eldest boy. All the petitioners' children attend parochial schools in Memphis. In 1954, at the time Tommy went to Treehaven, he and his younger brother were enrolled at a parochial school in Memphis where the tuition charge was $20 per year. The petitioners sent Tommy to Arizona upon the advice of Dr. Allen and with the hope that the climate there would build him up to the extent that he could eventually come back to Memphis and live a normal life, although unfortunately it did not have this effect. They would not have sent him to Arizona if the doctor had not advised it. They placed him in Treehaven School, with the approval of the doctor, because of the desirability of having him associate with other children of his own age, because the school and its personnel were trained and experienced in dealing with asthmatic children, and because Florence Schneider had a doctorate in sociology and was a warm and motherly person. They did not place him in Treehaven School for the purpose of giving him an education. At the time of the hearing Tommy was living in Memphis and was being taught by a tutor.

Of the amount of $2,509.59 paid by the petitioners to Treehaven School in 1955, only the amount of $350, which was paid to a local

private medical doctor and a private clinical psychologist for services to Tommy, constituted deductible medical expense. The amount of $165.66 paid by the petitioner Mary C. Lichterman for a round trip airplane ticket from Memphis to Tucson represented medical expense. Of the amount of automobile rental paid by the petitioners in 1955 while in Tucson, only the amount of $85 constituted medical expense.

### OPINION.

The respondent in the notice of deficiency held that the actual transportation expenses incurred by the petitioners for two round trip tickets for their asthmatic son Tommy to Tucson, Arizona, as well as the cost of a round trip ticket for the father in taking the son to Tucson, constituted expenses paid for medical care within the meaning of section 213 of the Internal Revenue Code of 1954.[2] However, he determined, and contends, that the amount of $2,509.59 which the petitioners paid to Treehaven School while Tommy was attending that school constituted payment for tuition, room and board, and as such is a nondeductible personal, living, or family expense within the meaning of section 262 of the 1954 Code,[3] and may not be allowed as a medical expense. The respondent takes the same position with respect to the living and transportation expenses incurred by the mother in visiting Tommy during the course of the school year, and the expenses incurred by the father during the 5 days he stayed in Tucson at the beginning of the school year, all of which amounted to $828.30.

The petitioners contend that Tommy was placed in the Treehaven School for medical and psychological reasons (the education, if any, obtained by him being merely incidental to his medical and psychological care), that their visits were upon the advice of the doctor and were necessary to reassure him and make him satisfied to stay at the school, and that therefore all the expenditures in question constituted medical expenses. Both parties rely upon section 1.213–1(e)(1) of

---

[2] Section 213 as it applied to the taxable year 1955 provided in part:

There shall be allowed as a deduction the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent * * *

(1) If neither the taxpayer nor his spouse has attained the age of 65 before the close of the taxable year, to the extent that such expenses exceed 3 percent of the adjusted gross income;

  *        *        *        *        *        *        *

(e) DEFINITIONS.—For purposes of this section—

(1) The term "medical care" means amounts paid—

(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or

(B) for transportation primarily for and essential to medical care referred to in subparagraph (A).

[3] Section 262 provides "Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses."

the Income Tax Regulations, pertinent portions of which are set forth in the margin.[4]

[4] Section 1.213–1(e)(1) provides in part:

(e) *Definitions*—(1) *General.*—(i) The term "medical care" includes the diagnosis, cure, mitigation, treatment, or prevention of disease. Expenses paid for "medical care" shall include those paid for the purpose of affecting any structure or function of the body, for accident or health insurance, or for transportation primarily for and essential to medical care. * * *

(ii) Amounts paid for operations or treatments affecting any portion of the body, including obstetrical expenses and expenses of therapy or X-ray treatments, are deemed to be for the purpose of affecting any structure or function of the body and are therefore paid for medical care. Amounts expended for illegal operations or treatments are not deductible. Deductions for expenditures for medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. Thus, payments for the following are payments for medical care: hospital services, nursing services (including nurses' board where paid by the taxpayer), medical, laboratory, surgical, dental and other diagnostic and healing services, X-rays, medicine and drugs (as defined in subparagraph (2) of this paragraph, subject to the 1-percent limitation in paragraph (b) of this section), artificial teeth or limbs, and ambulance hire. However, an expenditure which is merely beneficial to the general health of an individual, such as an expenditure for a vacation, is not an expenditure for medical care.

* * * * * * *

(iv) Expenses paid for transportation primarily for and essential to the rendition of the medical care are expenses paid for medical care. However, an amount allowable as a deduction for "transportation primarily for and essential to medical care" shall not include the cost of any meals and lodging while away from home receiving medical treatment. For example, if a doctor prescribes that a taxpayer go to a warm climate in order to alleviate a specific chronic ailment, the cost of meals and lodging while there would not be deductible. On the other hand, if the travel is undertaken merely for the general improvement of a taxpayer's health, neither the cost of transportation nor the cost of meals and lodging would be deductible. * * *

(v) The cost of in-patient hospital care (including the cost of meals and lodging therein) is an expenditure for medical care. The extent to which expenses for care in an institution other than a hospital shall constitute medical care is primarily a question of fact which depends upon the condition of the individual and the nature of the services he receives (rather than the nature of the institution). A private establishment which is regularly engaged in providing the types of care or services outlined in this subdivision shall be considered an institution for purposes of the rules provided herein. In general, the following rules will be applied:

(a) Where an individual is in an institution because his condition is such that the availability of medical care (as defined in subdivisions (i) and (ii) of this subparagraph) in such institution is a principal reason for his presence there, and meals and lodging are furnished as a necessary incident to such care, the entire cost of medical care and meals and lodging at the institution, which are furnished while the individual requires continual medical care, shall constitute an expense for medical care. For example, medical care includes the entire cost of institutional care for a person who is mentally ill and unsafe when left alone. While ordinary education is not medical care, the cost of medical care includes the cost of attending a special school for a mentally or physically handicapped individual, if his condition is such that the resources of the institution for alleviating such mental or physical handicap are a principal reason for his presence there. In such a case, the cost of attending such a special school will include the cost of meals and lodging, if supplied, and the cost of ordinary education furnished which is incidental to the special services furnished by the school. Thus, the cost of medical care includes the cost of attending a special school designed to compensate for or overcome a physical handicap, in order to qualify the individual for future normal education or for normal living, such as a school for the teaching of braille or lip reading. Similarly, the cost of care and supervision, or of treatment and training, of a mentally retarded or physically handicapped individual at an institution is within the meaning of the term "medical care."

(b) Where an individual is in an institution, and his condition is such that the availability of medical care in such institution is not a principal reason for his presence there, only that part of the cost of care in the institution as is attributable to medical care (as defined in subdivisions (i) and (ii) of this subparagraph) shall be considered as a cost of medical care; meals and lodging at the institution in such a case are not considered a cost of medical care for purposes of this section. * * *

The petitioner testified to the effect that his sole purpose in taking Tommy to Arizona and placing him in the Treehaven School was to attempt to improve his health to the point that he could eventually come back to Memphis and live a normal life, and that he did not take him there for the purpose of obtaining an education. He stated that the reason he put him in a school was because he found no other place where he could leave him except a hospital, and that he did not want him to be in a hospital. He stated that his reason for selecting Treehaven School was because of the personalities of the Schneiders and because Florence Schneider had a doctorate in sociology. Dr. Allen testified that he advised sending Tommy to Arizona for the benefit that would be derived from the climate. He also approved the petitioner's selection of the school because he believed that Tommy's association with other children would be more beneficial than confinement in a hospital.

In *Max Carasso*, 34 T.C. 1139, affd. (C.A. 2) 292 F. 2d 367, we held that where the taxpayer, upon his doctor's advice, took a 9-day trip to Bermuda for the purpose of convalescence after two serious operations, the transportation expenses incurred for him and his wife (whose presence and assistance were essential) were allowable medical expenses, but that the amounts expended by them for meals and hotel in connection with such trip were not.[5]  In so holding we resorted to the legislative history of the change effected by section 213 of the 1954 Code (H. Rept. No. 1337, 83d Cong., 2d Sess., p. 30, and S. Rept. No. 1622, 82d Cong., 2d Sess., pp. 35, 219–220), pointing out that the House Report stated:

A new definition of "medical expenses" is provided which incorporates regulations under present law and also provides for the deduction of transportation expenses for travel prescribed for health, but not the ordinary living expenses incurred during such a trip.

\*　　\*　　\*　　\*　　\*　　\*　　\*
\* \* \* The deduction permitted for "transportation primarily for and essential to medical care" clarifies existing law in that it specifically excludes deduction of

---

[5] In *Robert M. Bilder*, 33 T.C. 155, we held that transportation expense incurred by the taxpayer in traveling from New Jersey to Florida and a part of the amount paid by him for the rental of an apartment in Florida in 1954 and 1955 constituted medical expenses, since the taxpayer had suffered heart attacks and had been advised by his doctor to spend the winters in Florida. The taxpayer was accompanied by his wife and child and the portion of the rental attributable to their use of the apartment was disallowed on the ground that the record did not show that having his family in Florida with him was necessary as a part of the treatment of his disease. In the *Carasso* case we disapproved the decision in the *Bilder* case to the extent that it failed to consider the legislative history of section 213 of the Internal Revenue Code of 1954 with respect to the nondeductibility of ordinary living expenses. In the *Carasso* case we pointed out that the portion of the regulations under the 1954 Code dealing with the treatment of living expenses is in accord with the legislative history. The *Bilder* case was appealed to the Court of Appeals for the Third Circuit, which held (*Commissioner* v. *Bilder*, 289 F. 2d 291) that the full amount of the rental of the apartment constituted medical expense, concluding that it was a necessary part of the medical care of the taxpayer that his wife and child should accompany him. The *Bilder* case is now pending before the Supreme Court, writ of certiorari having been granted November 13, 1961.

any meals and lodging while away from home receiving medical treatment. For example, if a doctor prescribes that a patient must go to Florida in order to alleviate specific chronic ailments and to escape unfavorable climatic conditions which have proven injurious to the health of the taxpayer, and the travel is prescribed for reasons other than the general improvement of a patient's health, the cost of the patient's transportation to Florida would be deductible but not his living expenses while there. * * *

In the *Carasso* case we specifically stated: "We express no opinion as to whether meals and lodging expenses might be deductible in other circumstances."

In affirming our decision in the *Carasso* case, the Court of Appeals for the Second Circuit pointed out that section 23(x) of the Internal Revenue Code of 1939, predecessor of section 213 of the 1954 Code, had been interpreted as including both travel expenses and amounts spent for food and lodging incidental to a trip necessary and prescribed for medical reasons (*L. Keever Stringham*, 12 T.C. 580, affd. (C.A. 6) 183 F. 2d 579; *Stanley D. Winderman*, 32 T.C. 1197; I.T. 3786, 1946-1 C.B. 75; Rev. Rul. 55-261, 1955-1 C.B. 307), but stated: "It is abundantly clear that Congress intended, by changing section 213 of the 1954 Code, to prohibit deductions of the kind now at issue before us."

In its committee reports with respect to section 213 of the 1954 Code Congress recognized that under some circumstances living costs may constitute medical expenses. Both reports state: "The subsection [e] is not intended otherwise to change the existing definitions of medical care, to deny the cost of ordinary ambulance transportation nor to deny the cost of food or lodging provided as part of a hospital bill." (H. Rept., *supra* at 61, S. Rept., *supra* at 220.)

It will be noted that the income tax regulations issued pursuant to section 213 of the 1954 Code recognize that cost of meals and lodging for a patient in a hospital constitute cost of medical care, and that under some circumstances cost of meals and lodging furnished in an institution other than a hospital may constitute cost of medical care. The regulations provide, however, that a private establishment, in order to be considered as a qualifying institution, must be regularly engaged in providing types of care or services referred to in the regulations. It is provided that where an individual is in an institution because his condition is such that the availability of medical care in such institution is a principal reason for his presence there, and meals and lodging are furnished as a necessary incident to continual medical care, the cost thereof shall be considered as expense for medical care. Such regulations also provide that while ordinary education is not medical care, the cost of medical care includes the cost of attending a special school for a mentally or physically handicapped individual, if his condition is such that the resources of the institution for alleviating such mental or physical handicap are a

principal reason for his presence there, and that in such case the cost of meals and lodging and ordinary education furnished which is incidental to the special service furnished by the school will be considered as cost of attending such school. Such regulations specifically provide, however, that where the availability of medical care in an institution is not a principal reason for his presence there, only that part of the cost of care in the institution as is attributable to medical care shall be considered as a cost of medical care, and that the cost of meals and lodging at the institution will not be considered a cost of medical care.

The medical care referred to in the regulations is that described in subdivision (e) (1) (i) and (ii) of section 1.213–1 thereof. The care there described appears to be that commonly considered as being of a medical character such as hospital services, nursing services, medical, laboratory, surgical, dental and other diagnostic and healing services, X-rays, and medicines and drugs. In the light of the language employed in sections 213 and 262 of the 1954 Code and the committee reports with respect to section 213, we are of the opinion that the regulations set forth reasonable rules to be applied in effectuating the statute.[6]

The Treehaven School is primarily an educational institution which teaches the usual academic courses which would be taught in a public school. It apparently has no special courses for retarded children or children who are afflicted with psychological problems. Nor does it appear that it was engaged in providing medical care. It does hold itself out as catering to and caring for ill children who have noncontagious diseases, and its employees are trained and experienced in dealing with asthmatic children. Florence Schneider has a doctorate in the field of sociology and social work. However, insofar as the record shows, the school does not have any qualified medical personnel on its staff. While it has a room or infirmary for the purpose of taking care of the asthmatic children, there is no evidence as to its equipment or the treatment administered. There is no showing that this was essentially different from an infirmary which is customarily provided in most schools.

The evidence does not show the state of Tommy's health while attending the Treehaven School or the character or extent of the treatment, if any, which the school staff gave him. The record does show that while he was there he was regularly treated by a medical doctor and a clinical psychologist, for both his asthmatic and psychological

---

[6] The Supreme Court has many times held that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes, and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons. *Commissioner* v. *South Texas Lumber Co.*, 333 U.S. 496.

conditions, but apparently the doctor and the psychologist were in private practice in Tucson. At least there is no showing that they were on the staff of the school. The petitioner had made arrangements with a private doctor for a hospital room in the event Tommy should have an attack of asthma while in Tucson. The school's brochure states that the all-inclusive charge of $2,100 was for everything "except medical and personal allowance."

Upon the record as presented, we must conclude that Treehaven School was not the type of institution which was regularly engaged in providing medical care within the contemplation of the statute and regulations, and that therefore the availability of medical care in the school was not a reason for Tommy's presence there. Although the atmosphere and routine of the school and the association with other children there were beneficial to Tommy, we cannot conclude that this constituted the furnishing of medical care by the school within the meaning of the statute and the regulations. It follows that the amounts paid by the petitioners to the school for Tommy's living costs may not be considered as medical expenses; rather, they are personal, living, or family expenses which are nondeductible under section 262 of the Internal Revenue Code of 1954.

Nor can it be considered that the ordinary education which was furnished to Tommy was incidental to any special service rendered by the school for the purpose of alleviating any mental or physical handicap. Here again the school provided an atmosphere which no doubt was beneficial with respect to Tommy's psychological condition, but there is no showing that he was given any special schooling or any treatment of a medical nature. Any psychological treatment or service which he received was apparently given by a private psychologist. Accordingly, we must conclude that no part of the amount paid to the school was for any psychological treatment or service rendered by it. The portion of the amount charged by the school for actual tuition falls within the category of purely personal expense which is nondeductible under section 262 of the 1954 Code. Cf. *Hobart J. Hendrick*, 35 T.C. 1223, where amounts paid to a school for services of a qualified psychologist and psychiatrist retained by the school were held to constitute medical expenses.

The total amount which the petitioners paid to the school was $2,509.59. The evidence shows that the regular charge for a boarding student was $2,100. It seems reasonable to conclude that since the $2,100 included everything except "medical and personal allowance," the excess of $409.59 was for medical and personal expenses. Since the record shows that pursuant to instructions given by Dr. Allen to the school Tommy regularly visited a local medical doctor and also visited a local psychologist during the 8 months of 1955 he was at the

school, it seems reasonable to conclude that this excess of $409.59 included amounts paid by the petitioners through the school to the doctor and the psychologist for their services to Tommy. From the record we cannot determine precisely how much was paid to the doctor and the psychologist. However, exercising our best judgment, we have found as a fact, under the principle of *Cohan* v. *Commissioner*, (C.A. 2) 39 F. 2d 540, that $350 was paid to such medical doctor and the clinical psychologist. Such amount constitutes medical expense. See *Hobart J. Hendrick, supra,* and Rev. Rul. 143, 1953–2 C.B. 129. Insofar as the record shows the remainder of the $409.59 was nondeductible personal expense.

The petitioners contend that the amount of $828.30 expended by them in connection with visiting Tommy in Tucson is properly deductible as a medical expense. This includes an amount spent by the mother for a round trip airplane ticket from Memphis to Tucson in April 1955, amounts expended by her for living expenses while in Tucson for a period of about 2 weeks, living expenses of the father for about 5 days when he took Tommy to Tucson in the fall of 1955, and car rental incurred by both petitioners during the times they were in Tucson. Following our holding in *Max Carasso, supra,* we conclude that amounts expended by the petitioners for meals and lodging while in Tucson constituted nondeductible personal expenses, and not medical expenses.

We think, however, that the cost of transportation incurred by the mother in visiting Tommy in Tucson in April 1955 constituted "transportation primarily for and essential to medical care" within the meaning of section 213(e)(1)(B). It is clear that it was necessary for Tommy to be in Arizona for the purpose of the cure, mitigation, and treatment of his asthmatic condition or to prevent his having asthma. It is also clear that his severe asthmatic condition had caused him to have a deep psychological problem. During the time he was in Tucson he regularly visited a clinical psychologist. Dr. Allen testified that Tommy was quite emotional and that his emotions had an adverse effect upon his condition. Dr. Allen also testified that he advised the petitioners that it would be good for Tommy for them to make visits to him to help his morale, including his psychological condition. The evidence shows that Tommy was dissatisfied and constantly requested that he be taken home. His mother's trip to Tucson in April 1955 was for the purpose of making him satisfied to stay in Tucson and obtain the benefit of the climate as advised by Dr. Allen. Under the circumstances we conclude that the amount paid for the mother's round trip airplane ticket to Tucson constitutes a deductible medical expense. See Rev. Rul. 58–533, 1958–2 C.B. 108, in which the respondent recognized that where, upon the basis

of competent medical advice, parents visit their child as a part of the child's therapy and medical management, the cost of the transportation involved constitutes a cost of medical care.

The mother stayed in Tucson for a period of about 2 weeks in April 1955, and the father stayed about 5 days in September when he placed Tommy in school for the fall session. The purpose of each petitioner in staying in Tucson was to make Tommy satisfied to remain in Tucson and to that end they made visits to see him each day. This involved transportation expense from their lodging to the school. Both petitioners rented cars in lieu of taking taxicabs or other transportation. The petitioner testified that it was just as cheap to rent a car as to use taxicabs. The evidence upon this subject is meager. We do not know the distance of each petitioner's lodging from the school or the number of visits made, except that while the petitioner was there for 5 days he made two trips a day. Nor do we know that the rented cars were used exclusively for the purpose of visiting Tommy. Under the circumstances we have exercised our best judgment and have concluded that $85, representing one-half of the amounts expended for rental of cars, constituted medical expense.

The amount of $828.30 includes some expenditures the character of which is not shown. The respondent's determination that the $828.30 did not constitute expenses for medical care is approved, except to the extent stated above.

*Decision will be entered under Rule 50.*