Maurice and Ethel Feinberg v. Commissioner.
Feinberg v. Commissioner
Docket No. 488-65.
United States Tax Court
T.C. Memo 1966-145; 1966 Tax Ct. Memo LEXIS 138; 25 T.C.M. (CCH) 777; T.C.M. (RIA) 66145; June 24, 1966
Maurice Feinberg, pro se, 536 Clinton Rd., Brookline, Mass. Raoul E. Paradis, for the respondent. DAWSON
Memorandum Opinion DAWSON, Judge: Respondent determined a deficiency in income taxes against petitioners for the taxable year 1961 in the amount of $241.91. One issue has been conceded by petitioner Maurice Feinberg. The only issue remaining for decision is whether tuition paid by petitioners for the attendance of their handicapped son at two private schools, *139 which provided no special medical services, is a deductible expense for medical care under section 213, Internal Revenue Code of 1954. The facts of this case have been fully stipulated and are hereby found accordingly. However, petitioner Ethel Feinberg refused to sign the stipulation of facts and is technically in default. Respondent moved to dismiss for lack of prosecution as to Ethel Feinberg, but the Court reserved ruling on the motion because it preferred to decide the case on the merits of the issue with respect to both petitioners. Under these particular circumstances the respondent's motion will be denied. Petitioners, Maurice and Ethel Feinberg, are husband and wife, residing at 536 Clinton Road, Chestnut Hill, Massachusetts. They filed their joint Federal income tax return for the taxable year 1961 with the district director of internal revenue, Boston, Massachusetts. Their son Alan Feinberg (hereinafter called Alan) was 18 years of age in 1961. He had a neurological and orthopedic condition called hydromyelia and platybasia, a congenital disease referred to as a benign cyst, located in the medulla of the brain stem. Successful surgery was performed *140 at the Leahy Clinic in Boston on December 1, 1959. Alan recovered to the extent that there was some improvement in his walking, although a pronounced limp and lack of coordination, as well as a general weakness, still remain. In addition, Alan suffers from a speech impairment. According to Horst Blume, a physician who has treated Alan for several years: This young man, because of his handicaps, naturally has developed many emotional involvements along with occasional severe depression * * *. It is my considered opinion that this young man cannot cope with the tremendous competition that exists in the public high schools. The overall commotion * * * is definitely beyond his physical strength and mental capacity. I conducted a most diligent search to find a proper school where the classes are small, where there is no athletic activity * * * which would compound his feeling of insecurity, and finally recommended that he attend the Hillcrest School in Brookline, and at a later date the Manter Hall School in Cambridge * * *. During the year 1961 Alan attended both the Hillcrest School and Manter Hall. Petitioners paid tuition of $220 to the Hillcrest School and $477.42 to Manter *141 Hall. In addition, the petitioners paid in 1961 on Alan's behalf a total of $1,027.50 to various doctors, including two physiotherapists. Neither Hillcrest nor Manter Hall had on their respective staffs a psychiatrist, a psychologist or a physiotherapist available to provide service generally performed by such professionals. Respondent in his notice of deficiency dated October 29, 1964, disallowed medical deductions claimed by petitioners for tuition paid by them to the Hillcrest and Manter Hall schools. Section 213 of the Internal Revenue Code of 1954 allows a deduction for amounts paid for medical care. [1] The applicable regulations state that for educational costs to be treated as a medical expense the individual must attend a "special school" with resources for alleviating the given mental or physical handicap and these resources must be a principal reason for the individual's presence there. [2]
*142 Petitioners contend that Hillcrest and Manter Hall both qualify as "special schools" within the meaning of the regulations. They stress the fact that Dr. Blume selected these schools after it appeared that Alan, because of his disabilities, could not adjust to attendance at a public high school. These schools were selected because Alan did not have to take a full curriculum and his courses could be carefully chosen; there were no athletic activities at either school; and Alan could start late and leave early to avoid the pushing and running. There was some noticeable improvement, i.e., Alan's severe mental depressions were alleviated. Respondent takes the position that Alan's attendance at Hillcrest and Manter Hall does not constitute section 213 "medical care" since those schools provided only a regular educational program for their students. We think it is clear from the legislative history of section 213, which was a reenactment of section 23(x) of the 1939 Code without any changes in legislative purpose, [3] that Congress intended to exclude from medical expense deductions any amounts spent on the preservation of general health or the alleviation of a physical or mental discomfort *143 which is unrelated to some particular defect or disease. Such deductions may be claimed only if incurred primarily for the prevention or mitigation of the particular physical or mental defect or illness. See S. Rep. No. 1631, 77th Cong., 2d Sess., p. 96; H. Grant Atkinson, Jr., 44 T.C. 39, 48 (1965); and L. Keever Stringham, 12 T.C. 580, 583-584 (1949), affirmed per curiam 183 F. 2d 579. If such expenses do not meet this narrow requirement, they must be treated as personal living and family expenses under section 262 of the Code. See H. Grant Atkinson, Jr., supra, discussing Commissioner v. Bilder, 369 U.S. 499 (1962). Section 1.213-1(e)(1)(v)(a) of the regulations sets forth two critical conditions which must be met before amounts paid to an institution as tuition can be treated as "medical care" under the statute. The conditions are: (1) There must be available at the institution "medical care" as defined in subsections *144 (i) and (ii) of section 1.213-1(e)(1) or resources for alleviating a mental or physical handicap; and (2) the availability of such medical care or resources must be a principal reason for the presence of the individual there. See H. Grant Atkinson, Jr., supra at p. 51. The stipulated facts show that the Hillcrest and Manter Hall schools had no special facilities to give medical care to Alan. Both schools are regular educational institutions. They are not concerned with correcting the mental and physical defects of individual students but rather with giving them a good education. While an individual student could select his curriculum according to his ability and attend classes at special hours to accommodate personal needs, this is no more than can be expected from many good private schools. In any event, such features do not constitute the type of "medical care" contemplated by the statute, even though they might aid in meeting the specific needs of a physically or mentally handicapped person. See Martin J. Lichterman, 37 T.C. 586, 597 (1961). Nor can we find any evidence here of medical services in the conventional sense. There were no psychiatrists, *145 psychologists or physiotherapists available on the staffs of either school. Indeed, the petitioners made numerous payments to doctors not affiliated with either school during 1961 for the treatment of Alan's problems. On this record we are constrained to conclude that Alan went to these schools primarily because he was unable to cope with the competition and general conditions existing at a public high school. Dr. Blume, in his letter to Maurice Feinberg dated September 7, 1963, speaks of long range planning so that one day this young man must acquire a normal educational background to help him support himself. Therefore, it is imperative that we now develop him intellectually where we cannot physically. The primary concern was with Alan's normal educational development, not with the services of a "special school." The fact that Dr. Blume recommended that Alan attend Hillcrest and Manter Hall is not an overriding consideration which proves that the tuition paid was actually a medical expense. See H. Grant Atkinson, Jr., supra; and Martin J. Lichterman, supra. Cf. L. Keever Stringham, supra.These schools were chosen because of their flexible *146 curriculum, lack of athletic activities, and absence of competition and commotion. There is no evidence that the physician recommended them because of special medical services or resources which could alleviate Alan's specific problems. Since medical services were not available at the Hillcrest or Manter Hall schools and since the availability of medical services or resources was not a principal reason for Alan's attendance at either school, we hold that the tuition payments must be disallowed as a medical expense. Our opinion in H. Grant Atkinson, Jr., supra, controls this case. Decision will be entered for the respondent. Footnotes
1. SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. (a) Allowance of Deduction. - There shall be allowed as a deduction the following amounts of the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent (as defined in section 152): * * *
(e) Definitions. - For purposes of this section - (1) The term "medical care" means amounts paid - (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or ↩
2. Sec. 1.213-1, Income Tax Regs.
* * *
(e) Definitions - (1) General. (i) The term "medical care" includes the diagnosis, cure, mitigation, treatment, or prevention of disease. Expenses paid for "medical care" shall include those paid for the purpose of affecting any structure or function of the body, for accident or health insurance, or for transportation primarily for and essential to medical care. * * * (ii) Amounts paid for operations or treatments affecting any portion of the body, including obstetrical expenses and expenses of therapy or X-ray treatments, are deemed to be for the purpose of affecting any structure or function of the body and are therefore paid for medical care. Amounts expended for illegal operations or treatments are not deductible. Deductions for expenditures for medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. Thus, payments for the following are payments for medical care: hospital services, nursing services (including nurses' board where paid by the taxpayer), medical, laboratory, surgical, dental and other diagnostic and healing services, X-rays, medicine and drugs (as defined in subparagraph (2) of this paragraph, subject to the 1-percent limitation in paragraph (b) of this section), artificial teeth or limbs, and ambulance hire. However, an expenditure which is merely beneficial to the general health of an individual, such as an expenditure for a vacation, is not an expenditure for medical care. * * *
(v) The cost of in-patient hospital care (including the cost of meals and lodging therein) is an expenditure for medical care. The extent to which expenses for care in an institution other than a hospital shall constitute medical care is primarily a question of fact which depends upon the condition of the individual and the nature of the services he receives (rather than the nature of the institution). A private establishment which is regularly engaged in providing the types of care or services outlined in this subdivision shall be considered an institution for purposes of the rules provided herein. In general, the following rules will be applied: (a) Where an individual is in an institution because his condition is such that the availability of medical care (as defined in subdivisions (i) and (ii) of this subparagraph) in such institution is a principal reason for his presence there, and meals and lodging are furnished as a necessary incident to such care, the entire cost of medical care and meals and lodging at the institution, which are furnished while the individual requires continual medical care, shall constitute an expense for medical care. For example, medical care includes the entire cost of institutional care for a person who is mentally ill and unsafe when left alone. While ordinary education is not medical care, the cost of medical care includes the cost of attending a special school for a mentally or physically handicapped individual, if his condition is such that the resources of the institution for alleviating such mental or physical handicap are a principal reason for his presence there. In such a case, the cost of attending such a special school will include the cost of meals and lodging, if supplied, and the cost of ordinary education furnished which is incidental to the special services furnished by the school. Thus, the cost of medical care includes the cost of attending a special school designed to compensate for or overcome a physical handicap, in order to qualify the individual for future normal education or for normal living, such as a school for the teaching of braille or lip reading. Similarly, the cost of care and supervision, or of treatment and training, of a mentally retarded or physically handicapped individual at an institution is within the meaning of the term "medical care."↩
3. H. Rept. No. 1337, 83d Cong., 2d Sess., p. 30; S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 35, 219-220; Detailed Discussion of the Technical Provisions of the Bill, H Rept. No. 1337, supra at A60.↩